# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

N° 05-CV-1155 (JFB) (LB)

———————————

PHILLIP JEAN-LAURENT,

Plaintiff,

VERSUS

P.O. DAVID HENNESSY; P.O. JOHN DOE; SGT. PAUL O'DONNELL,

Defendants.

———————————

MEMORANDUM AND ORDER
August 1, 2008

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Phillip Jean-Laurent ("plaintiff" or "Jean-Laurent") brought the instant action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and New York State tort law against defendants Police Officer David Hennessy ("Hennessy"), Sergeant Paul O'Donnell ("O'Donnell"), and John Doe Police Officer ("John Doe Officer"), alleging that Jean-Laurent's civil rights were violated during his arrest on June 11, 2002. In conjunction with that arrest, plaintiff pleaded guilty to criminal possession of a controlled substance in the seventh degree (N.Y. Penal Law § 220.03) on August 13, 2002.

Hennessy and O'Donnell (collectively, "defendants") now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court grants defendants' motion in part and denies it in part. Specifically, the Court denies defendants' motion with respect to Jean-Laurent's claims of (1) excessive force; (2) unreasonable search and seizure in connection with plaintiff's alleged public strip search; and (3) intentional infliction of emotional distress, conspiracy, and "deprivation of money," or conversion, under New York State law. The motion is granted on

---

[1] As the Court explains *infra*, the parties have been unable to identify John Doe Officer despite the efforts of the parties undertaken under the supervision of Magistrate Judge Lois Bloom. However, as the Court also explains *infra*, the parties' inability to identify John Doe Officer does not require that summary judgment be granted as to the other defendants.

all other claims.

## I. FACTS

On the evening of June 11, 2002, plaintiff was arrested for criminal possession of a controlled substance in the third degree and criminal possession of marijuana in the fifth degree, in violation of New York Penal Law §§ 220.26-1 and 221.10-1. Set forth below are the facts relevant to this arrest, which is the central issue in this lawsuit.

The Court has taken these facts from the parties' depositions, affidavits, and exhibits, and from defendants' "Local Rule 56.1 statement of facts" ("Defs.' 56.1").[2] Upon

consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001).

### A. Background

As of June 11, 2002, Jean-Laurent was self-employed as an "illegitimate cab-[driver]," *i.e.,* he operated a cab without a license or registration, and without paying taxes. (Pl.'s Dep. at 39-40, 43.) On June 11, 2002, in the course of this business and prior to the arrest at issue in this case, Jean-Laurent drove an unnamed individual to various "residential and business" locations in plaintiff's wife's car.[3] (Pl.'s Dep. at 80-81.) Jean-Laurent "assume[d]" that the individual was going to

---

[2] As defendants pointed out in their reply brief, plaintiff has failed to comply with Local Civil Rule 56.1 in that he did not properly respond to Defs.' 56.1. However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiff did not comply with Rule 56. 1, his written submissions – and, in particular, his "Affirmation In Opposition to Defendants' Summary Judgment Motion" ("Pl.'s Aff.") – cite to the relevant portions of the record upon which plaintiff is relying. Thus, both the moving parties and the Court are clearly aware of the portions of the record upon which plaintiff relies in opposition to the motion, and defendants have not identified any prejudice arising from plaintiff's failure to comply with Rule 56.1. Accordingly, in the exercise of its broad discretion, the Court will not reject plaintiff's opposition based upon his failure to comply with Rule 56.1, but rather has fully considered

plaintiff's opposition to defendant's summary judgment motion on the merits. *See, e.g., Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 n. 2 (2d Cir. 2003) (excusing failure to comply with Local Civil Rule 56.1 where the relevant facts were apparent from the parties' submissions and there was no evidence of prejudice from the defect); *Williams v. R.H. Donnelley Inc.*, 199 F. Supp. 2d 172, 174 n.1 (S.D.N.Y. 2002) (excusing failure to submit statement pursuant to Local Civil Rule 56.1 where the facts were set forth in the party's memorandum of law). Defendants further point out that plaintiff failed to provide defendants with copies of certain of the exhibits appended to plaintiff's opposition papers and argue that certain of the exhibits are otherwise unreliable. Thus, defendants argue, the Court should disregard these exhibits. However, in the exercise of its discretion, the Court has reviewed all of the submissions made by both parties. The Court notes, in any event, that none of plaintiff's exhibits to which defendants object has materially affected the Court's analysis herein.

[3] Plaintiff cannot identify the individual. (Pl.'s Aff. ¶ 20.)

---

2

these various locations for the purpose of selling drugs. (Pl.'s Dep. at 81.) However, plaintiff "denies knowledge that [the] individual was actually selling drugs." (Pl.'s Aff. ¶ 18.)

According to plaintiff, the individual "dropped his drugs in [plaintiff's] car." (Pl.'s Dep. at 87.)

## B. The Police Approach Plaintiff

Immediately prior to the arrest, Jean-Laurent and his wife were parked in the area of 94th Street and Lefferts Boulevard in Queens, New York. (Pl.'s Dep. at 88.) Plaintiff and his wife heard police sirens. (Pl.'s Dep. at 94.) Plaintiff saw police officers, including defendants, jump out of a car. (Pl.'s Dep. at 104.)

According to a Criminal Court Complaint filed in conjunction with Jean-Laurent's arrest, the police approached plaintiff because they had observed plaintiff seated in his wife's parked car smoking a marijuana cigarette. (Defs.' Exh. F.)

However, according to plaintiff, he and his wife were parked merely because they were on a narrow street and needed to let cars pass before they could get through. (Pl.s' Dep. at 88-89.) Plaintiff and his wife "vehemently de[ny]" that they were observed smoking marijuana. (Pl.'s Aff. ¶ 12.)

## C. The Drugs

According to Jean-Laurent, at the time that plaintiff saw the police officers, he had 26 individual packets of crack cocaine in his left pocket. (Pl.'s Dep. at 104.) When he saw the police, he put all of the drugs "in his butt cheeks" in order to "conceal" the drugs.

(Pl.'s Dep. at 104-105; *see also* Pl.'s Dep. at 74, 77.) Plaintiff testified that the crack cocaine consisted of the drugs that the unnamed individual had dropped in his car. (Pl.'s Dep. at 76, 78.) However, he also testified that, even though the drugs were not his, he "will take the responsibility for it." (Pl.'s Dep. at 75.)

In addition, plaintiff testified that, at the time the police approached the car, its ashtray contained "marijuana clips" because Jean-Laurent's wife had been smoking marijuana. (Pl.'s Dep. at 72.) However, plaintiff states that she had been smoking the marijuana on a day prior to June 11, 2002. (Pl.'s Aff. ¶ 22.)

## D. The Money

In addition to drugs, plaintiff testified that he had $3,240 on his person when he was stopped by the police. (Pl.s Dep. at 67.) According to plaintiff, he was going to open a clothing business with the money. (Pl.'s Dep. at 58-59.) Defendants, however, state that plaintiff only had $1,848 dollars on him at the time of the arrest. (Defs' Resp. to Pl.'s Aff. ¶ 26; Property Clerk's Invoice (Defs.' Exh. C).)

Plaintiff testified that, when the police approached the vehicle, he placed the money "in [his] pocket and zipp[ed] up [his] pocket." (Pl.'s Dep. at 114.)

## E. The Pat-Frisk

According to Jean-Laurent, O'Donnell removed him from the car and then "slammed [him] . . . up against the car and cuffed" him. (Pl.'s Dep. at 123-24.)[4] Plaintiff stated that he

---

[4] Although Jean-Laurent stated at his deposition that Hennessy, and not O'Donnell, initially removed him from the car and slammed him

did not resist being handcuffed. (Pl.'s Dep. at 128.)

According to plaintiff, he was then "hemmed up against the car and . . . pat frisked" by Hennessy. (Pl.'s Dep. at 134.) Hennessy recovered the money that Jean-Laurent had hidden in his pants pocket. (Pl.'s Dep. at 136.)

Plaintiff testified that, during the pat-frisk, Hennessy repeatedly asked plaintiff where his drugs were hidden. (Pl.'s Dep. at 137.) Plaintiff overheard defendants speaking and one of them said: "It was in his butt." (Pl.'s Dep. at 152.)

F. Alleged Strip Search in Public Street

Jean-Laurent testified that he was wearing elastic sweatpants on the date of the arrest, (Pl.'s Dep. at 116-17), and that John Doe Officer conducted a strip search of plaintiff on the street (*id.* at 152, 154, 155-56).

Specifically, at his deposition, plaintiff testified as follows regarding this alleged public strip search:

> A: I was telling them [d]on't strip search me out here. When they tried to do it, I tried like to – like turn around. They kept on trying to pull my – kept on trying to loosen the string, and so they hemmed me up against the wall, slammed me up against

the car, cocked my arms up from the rear.
Q: You said you tried to turn around?
A: Yes. When they were trying to pull my pants down.
Q: Who was trying to pull your pants down?
A: John Doe.
Q: Where was Officer Hennessy at that time?
A: He was holding onto me.
Q: Where was Sergeant O'Donnell?
A: He was holding onto me. They were trying to hold onto my arms.
Q: You said you tried to resist Officer Doe pulling your pants down; is that right?
A: Right.
Q: Aside from trying to turn around to try to resist, did you take any other action?
A: No. I was in handcuffs.
Q: Did you say anything at that time?
A: Yeah. Don't strip search me in the street.

*        *        *

Q: You said that you were slammed up against the car again?
A: Yes.
Q: Can you describe how you were slammed up against the car?
A: When I was trying to resist, he pushed my head on the trunk.
Q: Who is "he"?
A: Hennessy mushed my head

---

against it, plaintiff explained in his Affirmation in Opposition to Defendants' Summary Judgment Motion that O'Donnell, and not Hennessy, took these steps. (Pl.'s Aff. ¶ 24.)

4

on the trunk, O'Donnell cocked my arms up.

Q: What part of your body made contact with the car when your body was slammed?

A: My face, my upper torso, my body period. All this here (indicating).

Q: Your upper torso, including your head?

A: Yes. He slammed my face right on the car.

*\*\**

Q: Were your pants pulled down?

A: Yes. To my mid-thighs, exposing all my privacy.

Q: Was anything else pulled down aside from your pants?

A: My underwears as well.

Q: Anything else?

A: That's it. There was nothing else to pull down.

Q: Was there anything else about how this search was conducted that you haven't already mentioned?

A: I sat there for a minute while he put his gloves on.

Q: Who?

A: John Doe. He spread my butt cheeks and put his hand in my butt and removed a bag of drugs.

Q: You are testifying here that the John Doe officer was the one that pulled your pants down?

A: Yes.

Q: The John Doe officer was the one that put the glove on?

A: Yes.

Q: What was Officer Hennessy doing at that time?

A: They were restraining me, Officer Hennessy and O'Donnell.

Q: How were they restraining you at that time?

A: Officer Hennessy was pinning my head down to the trunk, Officer O'Donnell cocked my arms upward while I was cuffed to the rear. He cocked my arms holding me back. I was screaming, You're hurting my arms, you know. I was basically cursing him out.

(Pl.'s Dep. at 152-62.)

Hennessy and O'Donnell have stated that they are unable to identify the "John Doe" officer who allegedly strip searched plaintiff in the street. (Hennessy Aff. ¶ 6; O'Donnell Aff. ¶ 6.) Further, defendants "dispute that a strip search of plaintiff was ever conducted in the street." (Defs.' Motion at 11 n.3.)

a. Alleged Witnesses to Public Strip Search

According to plaintiff, individuals named "John, Bud, Light, Dashon, Kim, triplets, one of the triplets, . . . Tishlam, [and] Red" witnessed the alleged strip search.[5] (Pl.'s Dep.

_____

[5] By Order dated October 4, 2006, Magistrate Judge Bloom ordered plaintiff to "fully identify the persons he alleges witnessed the incident that is the subject of his claim . . . by October 11, 2006 or he shall be precluded from using any such material in support of his claim." To date, plaintiff has not fully identified any of the individuals he named as witnesses at his deposition. (Defs.' 56.1 ¶ 26.) He has merely provided physical descriptions and the

5

at 162.)

### G. Strip Search at Police Station

It is undisputed that plaintiff was subsequently brought to the police station and strip searched there by Hennessy and O'Donnell. (Pl.'s Dep. at 177; Defs.' Exh. E.) According to Jean-Laurent, nothing was recovered from his person during the strip search at the station. (Pl.'s Dep. at 178.)

### H. The Criminal Court Complaint and Guilty Plea

According to the Criminal Court Complaint, Hennessy recovered twenty-six pieces of crack/cocaine from plaintiff's underwear, (Defs.' Exhs. D, F), and $1,848 in cash from plaintiff's pants pocket. (Defs.' Exs. C, D.)[6]

On August 13, 2002, plaintiff pleaded guilty to Criminal Possession of a Controlled Substance in the Seventh Degree [N.Y. Penal Law § 220.03], and was sentenced to one year imprisonment and a six month suspended license. (Defs.' Exhs. G, H, I; Pl.'s Dep. at 187-88.) Plaintiff also forfeited $1,848. (Defs.' Exh. K; Am. Compl. ¶ 19.)[7]

### I. Alleged Damages

#### (1) Alleged Physical Damages

Plaintiff testified that he was not hit, struck, punched, or kicked by police officers at any point on June 11, 2002, and stated that he "never needed medical attention" as a result of the incident. (Pl.'s Dep. at 168-169.) When plaintiff was asked whether he was alleging any physical injuries resulting from the June 11, 2002 incident, plaintiff responded, "[f]or the tenth time, no." (Pl.'s Dep. at 188.) However, plaintiff has also stated that defendants "restrained him very forcefully and caused him great physical pain. . . ." (Pl.'s Aff. ¶ 26.)

#### (2) Alleged Emotional Damages

Jean-Laurent states that he was emotionally injured by the strip search. (Pl.'s Dep. at 188.) Specifically, he states that he "was very stressed out, very depressed, very depressed. I was kind of disturbed, actually being strip searched, my wife being incarcerated, pregnant. I was under a lot of stress. I was very depressed, angry." (Pl.'s Dep. at 188.) Plaintiff testified that he has never sought treatment for these emotional injuries. (Pl.'s Dep. at 196-97.)[8] He testified that he did not seek treatment because he is "not the type of person – I just hold a lot of things in. I bottle a lot of things up." (Pl.'s Dep. at 190.)

Moreover, plaintiff has testified that he had been strip searched on multiple occasions prior to June 11, 2002 and, since that date, has

---

aforementioned nicknames. (Pl.'s Aff. ¶ 28.)

[6] As stated *supra*, plaintiff claims that defendants actually recovered $3,240.

[7] Plaintiff is currently incarcerated on other charges. (Defs.' Exh. H.)

---

[8] In connection with another action, *Jean-Laurent v. C.O. Wilkerson*, 05-CV-583 (VM) (DFE), plaintiff stated during a sworn deposition that he did not have any emotional problems prior to a June 16, 2004 incident at Rikers Island that is the subject matter of that lawsuit. (Defs.' Exh. J. at 109.) However, plaintiff states that he misunderstood the question for which he provided that response. (Pl.'s Aff. ¶ 34.)

been strip searched "numerous" times that he "can't even count." (Pl.'s Dep. at 194-195.) He further testified: "Times when police officers strip searched me, I break down and cry that I have exposed [my] body to so many people. Me being strip searched, I don't take that lightly, very offensive, when I have to strip search, that I have to go through that." (Pl.'s Dep. at 196.) However, plaintiff has also stated that he experienced more "severe emotional distress" when he was allegedly strip searched in the street on June 11, 2002. (Pl.'s Aff. ¶ 36.)

Plaintiff further testified that his emotional injuries have not healed. (Pl.'s Dep. at 191.) Specifically, he said: "When I sit back right now and I think about it – I do that pretty often – it kills me, and I do that a lot right now." (Pl.'s Dep. at 191.)

## II. Procedural History

Jean-Laurent initially brought this action on December 24, 2004 in the United States District Court for the Southern District of New York. The case was transferred to the Eastern District of New York on February 24, 2005. On December 5, 2005, plaintiff submitted an amended complaint, which Hennessy and O'Donnell answered on December 12, 2005.

On January 1, 2007, defendants submitted a motion for summary judgment. Plaintiff submitted a response on March 16, 2007, and defendants replied on April 9, 2007.

By Order dated August 28, 2007, the Court denied defendants' motion for summary judgment without prejudice, on the grounds that defendants had failed to serve plaintiff with a "Notice to Pro Se Litigants

Opposing Summary Judgment" in accordance with Local Rule 56.2. The Court ordered defendants to re-file and serve their motion in compliance with Rule 56.2 by September 7, 2007, and afforded plaintiff the opportunity to supplement his original response by October 5, 2007.

On September 4, 2007, defendants resubmitted their motion in compliance with Rule 56.2. Plaintiff did not supplement his original response.[9]

### A. The Identity of John Doe Officer

Set forth below are the steps the Court took in order to identify John Doe Officer.

By Order dated March 29, 2006, Magistrate Judge Bloom ordered defendants to inform the Court whether any officers assigned to the narcotics squad that arrested plaintiff matched his description of John Doe Officer. By letters dated April 12, 2006 and April 21, 2006, defendants updated Magistrate Judge Bloom on the status of defendants' efforts to identify that officer.

By Order dated May 4, 2006, Magistrate Judge Bloom ordered Hennessy and O'Donnell to submit sworn affidavits to the Court identifying John Doe Officer. Further, to the extent that Hennessy and O'Donnell were unable to provide such an identification, Magistrate Judge Bloom also ordered defendants to produce photographs of all officers that fit plaintiff's description of John

---

[9] As the Court explains *infra*, however, Jean-Laurent moved to amend the complaint on October 15, 2007. By letter dated October 18, 2007, defendants opposed plaintiff's motion. For the reasons the Court also sets forth *infra*, plaintiff's motion to amend the complaint is denied.

Doe Officer. By letter dated May 31, 2006, defendants notified the Court that Hennessy and O'Donnell had signed affidavits stating that they could not identify John Doe Officer. By Order dated June 2, 2006, Magistrate Judge Bloom ordered defendants to produce a photo array to plaintiff of any police officers who fit the description of John Doe Officer and who could have been present at the time of Jean-Laurent's arrest.

Subsequently, during a telephone conference with Magistrate Judge Bloom on October 4, 2006, she noted that defendants had provided Jean-Laurent with photographs of possible John Doe Officers as well as the "102nd precinct roll call from the date of the incident which set forth the names of all officers assigned to the third tour on that date." (Exh. K at 26.) Magistrate Judge Bloom noted that, nevertheless, plaintiff still could not identify John Doe Officer. As a result, Magistrate Judge Bloom stated: "I am at the end of what I can do in order to get a John Doe named here." (Exh. K at 25.) To date, therefore, neither the parties nor the Court has been able to identify John Doe Officer.

III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of

showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or

facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

Moreover, where the plaintiff is proceeding *pro se*, the Court must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). Though a *pro se* litigant's pleadings are afforded wide latitude, a *pro se* party's "bald assertion," completely unsupported by evidence, is not sufficient to defeat a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Instead, to overcome a motion for summary judgment, the non-moving party "must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal citations omitted); *see also Morris v. Ales Group USA, Inc.*, No. 04-CV-8239 (PAC), 2007 U.S. Dist. LEXIS 47674 2007 U.S. Dist. LEXIS 47674, at *10 (S.D.N.Y. June 28, 2007) ("[T]o survive summary judgment, plaintiff's facts 'must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.'") (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981)).

## IV. CLAIMS RELATED TO PLAINTIFF'S ARREST

In conjunction with his arrest, plaintiff asserts claims under Section 1983 for false arrest/false imprisonment,[10] malicious prosecution, conspiracy, and abuse of process. As the Court sets forth below, after carefully reviewing the record and drawing all reasonable inferences in Jean-Laurent's favor, the Court agrees with defendants that plaintiff's claims for false arrest/imprisonment, malicious prosecution, and abuse of process fail as a matter of law.[11] Specifically, as the Court sets forth below, the Supreme Court's decision in *Heck v. Humphrey* entitles defendants to summary judgment with respect to all of these claims.

### A. The *Heck* Rule

In *Heck v. Humphrey*, the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (citing *Heck* 512 U.S. 477 (1994)). Specifically, the *Heck* Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been

---

[10] "A claim for false arrest is a type of claim for false imprisonment." *Coyle v. Coyle*, 354 F. Supp. 2d 207, 211 (E.D.N.Y. 2005) (citing *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996)).

[11] Moreover, although defendants did not move for summary judgment on plaintiff's claim for conspiracy, the Court dismisses this claim *sua sponte*, as discussed *infra*.

reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 486-87 (footnotes omitted).

Further, pursuant to *Heck*, courts routinely dismiss claims of false arrest/imprisonment, malicious prosecution, abuse of process, and conspiracy brought under Section 1983. *See Younger v. City of New York*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding that plaintiff's claims for false arrest/ imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck*); *Amaker*, 179 F.3d at 51-52 (holding that *Heck* applies to Section 1983 conspiracy); *Bratton v.*

*Baker*, No. 9:03-CV-1458, 2005 U.S. Dist. LEXIS 46499, at *14 n.3 (N.D.N.Y. Mar. 10, 2005), *adopted in its entirety* 2006 U.S. Dist. LEXIS 97551 (N.D.N.Y. Jan. 26, 2006) (noting that *Heck* applies to claims of abuse of process); *Sanchez v. Suffolk County Criminal Court Judge Ralph Gazzillo*, No. 00-CV-6405, 2001 U.S. Dist. LEXIS 7786, at *14-*15 (E.D.N.Y. June 5, 2001) (same).[12]

---

[12] The Court notes, with respect to Jean-Laurent's abuse of process claim that, because plaintiff's opposition papers did not address defendant's motion for summary judgment on this claim, it could be deemed abandoned and summary judgment could be granted on that basis alone. *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03-CV-6614 (WHP), 2006 U.S. Dist. LEXIS 7368, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on the claim); *see also DeVito v. Barrant*, No. 03-CV-1927 (DLI), 2005 U.S. Dist. LEXIS 22444, at *10 (E.D.N.Y. Aug. 23, 2005) (same); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. NASDAQ/AMEX Mkt. Group*, No. 00-CV-9827 (MBM), 2003 U.S. Dist. LEXIS 166, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims); *see also* Local Civ. Rule 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default."). Moreover, even if the claim were not deemed abandoned or precluded under *Heck*, the Court has determined that the claim fails on the merits as a matter of law. In particular, in order to demonstrate malicious abuse of process under Section 1983, a

## B. Application

Here, at stated *supra*, Jean-Laurent was convicted upon a plea of guilty on August 13, 2002 to criminal possession of a controlled substance in the seventh degree. In plaintiff's Memorandum of Law, he states the he "file[d] two post-conviction motion [sic]" and appealed the denials thereof "to the Appellate Term and the Court of Appeals . . . which also denied him leave to appeal. (Pl.'s Mem. at 5.) In addition, plaintiff has provided to the Court submissions he made in conjunction with an application to the United States District Court for the Eastern District of New York for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, arising out of his incarceration for the arrest at issue in this case. (*See* Pl.'s Exh. III.) In his motion to amend the complaint, Jean-Laurent

explained that the Court denied his application for *habeas* relief. (*See* Pl.'s Aff. in Support of Motion to Amend Complaint.)[13]

Because the record, therefore, indisputably demonstrates that Jean-Laurent has been unsuccessful in challenging his conviction (and incarceration), no reasonable jury could find that this conviction has been invalidated in any way by any state or federal court or other state or federal official. Under such circumstances, the Supreme Court's holding in *Heck* precludes plaintiff from bringing claims under Section 1983 for false arrest, malicious prosecution, conspiracy, and abuse of process in relation to that conviction.

Nevertheless, plaintiff argues that *Heck* does not preclude these claims. Specifically, plaintiff repeatedly argues that "his guilty plea was not voluntarily and intelligently entered into as a result of counsel's improper advise [sic]." (Pl.'s Mem. at 10.) However, to determine whether plaintiff's guilty plea was entered involuntarily as a result of ineffective assistance of trial counsel would squarely violate the rule in *Heck*, as such an inquiry would necessarily require this Court to call plaintiff's conviction into question. *See, e.g., Osuch v. Gregory*, 303 F. Supp. 2d 189, 196 (D. Conn. 2004) (dismissing Section 1983 action against plaintiff's public defender where plaintiff alleged that the public defender was ineffective in urging plaintiff to plead guilty because, if plaintiff prevailed in his action for

---

plaintiff must establish the claim's elements under state law. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). A plaintiff may assert a malicious abuse of process claim where a defendant: "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook*, 41 F.3d at 80). Here, the record contains absolutely no evidence that defendants aimed to achieve an objective collateral to plaintiff's arrest or prosecution. In fact, nowhere in the record, including Jean-Laurent's deposition testimony, does plaintiff assert – or even imply – that such a collateral objective existed. Under such circumstances, no reasonable jury could find in plaintiff's favor on his abuse of process claim and, therefore, such claim must fail as a matter of law.

[13] The Court has taken judicial notice of the docket sheet in Jean-Laurent's *habeas* case. The docket sheet indicates that plaintiff appealed the denial of his *habeas* application, but the Second Circuit Court of Appeals dismissed the appeal on timeliness grounds on November 9, 2007. (*See* Docket Entry 15 in *Jean-Laurent v. Artus*, 06 Civ. 5495 (RJD).)

damages, "[plaintiff's] conviction necessarily would be called into question" in violation of *Heck*); *Evans v. Nassau County*, 184 F. Supp. 2d 238, (E.D.N.Y. 2002) ("Evans pled guilty, was sentenced, and is currently incarcerated as a result of the arrest and prosecution he now challenges. A money judgment in Evans' favor on his Section 1983 false arrest and ineffective assistance of counsel claims would necessarily imply the invalidity of the his criminal conviction and sentence. Evans [sic] conviction and sentence have not been reversed or otherwise declared invalid. Accordingly, to the extent that it is possible to raise a Section 1983 ineffective assistance of counsel claim, that cause, as well as Evans' Section 1983 false arrest claim are barred by [*Heck*]. [Defendant's] motion for summary judgment in regard to those claims is granted."). The Court therefore, will not undertake such an inquiry here.[14]

In sum, the Court concludes that the *Heck* rule, as a matter of law, prevents plaintiff from bringing claims for false arrest/imprisonment, conspiracy, abuse of process, and malicious prosecution pursuant to Section 1983.[15]

---

[14] Jean-Laurent also argues that the *Heck* rule does not apply here because plaintiff's conviction by a plea of guilty was not for the offense for which he was arrested, but for a lesser included offense. (Pl.'s Mem. at 8.) For the reasons set forth below, however, the Court disagrees. The Court recognizes that a plaintiff's conviction on one offense does not automatically bar a malicious prosecution claim for other offenses that were terminated in plaintiff's favor. *See Janetka v. Dabe*, 892 F.2d 187, 189-90 (2d Cir. 1989); *accord D'Angelo v. Kirschner*, Nos. 06-3809-cv, 07-2970-cv, 2008 WL 2873532, at *3 (2d Cir. July 23, 2008); *Fulton v. Robinson*, 289 F.3d 188, 195-96 (2d Cir. 2002). However, in the instant case, because the other charges against plaintiff were dropped in exchange for a plea of guilty to criminal possession of a controlled substance in the seventh degree, such dismissal of the charges does not constitute "termination in plaintiff's favor" for purposes of a malicious prosecution claim. *See Posr v. Court Officer Shield # 207*, 180 F.3d 409, ([I]f the outcome

'was the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused, . . . it is not a termination in favor of the accused for purposes of a malicious prosecution claim.'") (quoting *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998)); *see also Flemming v. City of New York*, No. 02 Civ. 4113, 2006 WL 1539331, at *2 (S.D.N.Y. June 2, 2006) (holding, in case where plaintiff pleaded guilty to criminal possession of a controlled substance in the seventh degree but argued that his malicious prosecution claim could lie on the basis of a third degree possession charge that had been dismissed in exchange for his guilty plea, that "[w]hile the Third Degree Charge may have been 'dismissed' as a consequence of plaintiff's plea to the lesser charge, that does not affect the application of the rule barring claims for false arrest and malicious prosecution where the plaintiff has pled guilty"); *Torres v. Howell*, No. 3:03CV2227, 2006 WL 1525942, at *6 (D. Conn. May 30, 2006) ("When a charge is dismissed as part of a plea bargain, the dropped charge cannot serve as the basis of a false arrest or malicious prosecution claim.") (collecting cases). The Court has determined, therefore, that summary judgment on any malicious prosecution claim related to the other offenses for which plaintiff was arrested, but to which plaintiff did not plead guilty, is also warranted.

[15] Similarly, to the extent plaintiff attempts to maintain claims pursuant to 42 U.S.C. §§ 1985 or 1986, those claims also fail under the rule announced in *Heck*. To hold otherwise would necessarily question the validity of plaintiff's conviction and, therefore, violate the *Heck* rule. *Amaker*, 179 F.3d at 52 (holding that "*Heck* . . . applies with respect not only to plaintiff's § 1983 claim but also to his §§ 1981, 1985(3) and 1986

## V. CLAIMS RELATED TO SEARCHES OF PLAINTIFF

In addition, pursuant to the Fourth Amendment, Jean-Laurent brings claims challenging the legality of his pat-frisk and alleged public strip search, as well as an excessive force claim. Defendants argue that they are entitled to summary judgment on all of these claims. However, as set forth below, although the Court agrees that defendants are entitled to summary judgment with respect to the pat-frisk, the Court denies summary judgment with respect to the excessive force claim and the claim related to plaintiff's alleged public strip search.

As a threshold matter, the Court notes that Jean-Laurent's guilty plea does not bar his claims for excessive force or unreasonable search and seizure with respect to the pat frisk or alleged public strip search. As district courts in the Second Circuit routinely recognize, "the *Heck* court singled out Fourth Amendment cases as examples of suits where a federal court's finding of a constitutional violation would not necessarily undermine the conviction." *Dockery v. Tucker*, No. 97-CV-3584, 2000 U.S. Dist.

----

claims" because the existence of a conspiracy would necessarily question the validity of plaintiff's conviction); *see also McNeill v. New York,* 06-CV-4843, 2006 U.S. Dist. LEXIS 77085, at *9, (E.D.N.Y. Oct. 19, 2006), *aff'd,* 2007 U.S. App. LEXIS 22717 (2d Cir. Sept. 25, 2007) ("*Heck* applies to plaintiff's conspiracy claims under § 1985(3) as well."); *Candelaria v. Greifinger,* No. 96- CV-0017 (RSP), 1997 U.S. Dist. LEXIS 16146 (N.D.N.Y. Oct. 14, 1997) (holding that *Heck* applies to claims under Sections 1985 and 1986); *Duamutef v. Morris,* 956 F. Supp. 1112, 1117-18 (S.D.N.Y. 1997) (holding that *Heck* applies to claims under Section 1985).

LEXIS 14908, at *27 (E.D.N.Y. Oct. 13, 2000) (citing *Heck,* 512 U.S. at 487 n.7); *see Jackson v. Suffolk County Homicide Bureau*, 135 F.3d 254, 257 (2d Cir. 1998) (reversing district court's dismissal of excessive force claim on *Heck* grounds "because a claim for use of excessive force lacks the requisite relationship to the conviction" to invoke *Heck*); *Spencer v. City of Stamford*, No. 3:06-cv-1209, 2007 U.S. Dist. LEXIS 28809, at *5 n.1 (D. Conn. Apr. 19, 2007) (noting that "it appears that Spencer's unreasonable search claim would not necessarily render his conviction invalid") (citing *Heck,* 512 U.S. at 487 n.7). Indeed, the Second Circuit recently reversed a district court that automatically dismissed a Fourth Amendment claim under *Heck*. *See Zarro v. Spitzer*, No. 06-5893-cv, 2008 U.S. App. LEXIS 8585, at *8 (2d Cir. Apr. 18, 2008).[16] Consequently, the Court concludes that *Heck* does not bar plaintiff's claims for excessive

----

[16] The Court is aware the *Heck* Court also held that, in order to sustain such a Fourth Amendment claim, a plaintiff must demonstrate that he has suffered an "actual, compensable injury . . . which . . . does not encompass the 'injury' of being convicted and imprisoned." *Heck*, 512 U.S. at 487 n.7 (citations omitted); *see Zarro*, 2008 U.S. App. LEXIS 8585, at *7-*8 ("The remainder of Count 13, however, which rests on the alleged Fourth Amendment violation, is not barred by *Heck*, though Plaintiff's conviction and incarceration cannot satisfy the requirement that he show that the unconstitutional search caused him actual, compensable injury.") (citation and quotation marks omitted). However, as set forth below, after carefully reviewing the record and drawing all reasonable inferences in plaintiff's favor, the Court has concluded that a rational fact-finder could find that Jean-Laurent has suffered such compensable injury with respect to his claim of excessive force and the claim challenging his alleged public strip search and, therefore, summary judgment is inappropriate for these two claims.

force or unreasonable search and seizure with respect to the pat frisk or alleged public strip search.

A. Excessive Force

As set forth below, the Court denies defendants' motion for summary judgment on Jean-Laurent's excessive force claim.

A police officer's use of force is excessive in violation of the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotations omitted).

Physical force is often necessary when effectuating arrests or executing search warrants and, thus, "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (citation and internal quotation marks omitted). The analysis involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citations omitted). "Officers may not . . .

gratuitously inflict pain in a manner that is not a reasonable response to the circumstances." *Diaz v. City of New York*, No. 00-CV-2944 (JMA), 2006 U.S. Dist. LEXIS 93923, at *18 (E.D.N.Y. Dec. 29, 2006) (citing *Amnesty Am.*, 361 F.3d at 124). However, "the reasonableness inquiry does not allow [the court] to substitute [its] own viewpoint; [the court] must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Papineau v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 396).

The Court recognizes that there may be certain circumstances where the alleged unconstitutional act and injury are so *de minimis* that the act cannot rise to a constitutional violation as a matter of law. *See, e.g., Vogeler v. Colbath*, No. 04-CV-6071 (LMS), 2005 U.S. Dist. LEXIS 44658, at *11 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment for defendant where plaintiffs failed to demonstrate that the alleged action by the police officer "was any more than de minimis force exerted during the course of an arrest following the raid of a suspected drug trafficking locale"); *Johnson v. Police Officer # 17969*, No. 99-CV-3964 (NRB), 2000 U.S. Dist. LEXIS 18521, at *5 (S.D.N.Y. Dec. 27, 2000) (dismissing excessive force claim based on admission that plaintiff resisted arrest and only alleged minor injuries). However, a plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment. *See Maxwell*, 380 F.3d at 108 ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising.") (citing *Robison*, 821 F.2d at 924-25); *see also Hayes*

*v. New York City Police Dep't*, No. 06-CV-0595, 2006 U.S. App. LEXIS 32344, at *1 (2d Cir. Jan. 16, 2007) (citing *Maxwell* and noting that "we have permitted claims to survive summary judgment where the only injury alleged is bruising"); *Robison*, 821 F.2d at 924 ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

Here, as set forth *supra*, in support of his excessive force claim, Jean-Laurent has testified that Hennessy and O'Donnell personally engaged in the following acts: (1) O'Donnell removed plaintiff from the car and then "slammed [him] . . . up against the car and cuffed" him; (2) Hennessy and O'Donnell "kept on trying to pull my – kept on trying to loosen the string, and so they hemmed me up against the wall, slammed me up against the car, cocked my arms up from the rear"; (3) defendants "slammed" plaintiff against the car a second time and, in particular, "Hennessy mushed [plaintiff's] head on the trunk, [and] O'Donnell cocked [plaintiff's] arms up," slamming plaintiff's face into the car; (4) during the alleged public strip search, "Officer Hennessy was pinning [plaintiff's] head down to the trunk, Officer O'Donnell cocked [plaintiff's] arms upward while [plaintiff] was cuffed to the rear. He cocked [plaintiff's] arms holding [him] back. [Plaintiff] was screaming, You're hurting my arms, you know. I was basically cursing him out"; and (5) defendants "restrained him very forcefully and caused him great physical pain. . . ."

Further, as a result of these alleged acts, plaintiff has testified – as set forth *supra* – that he suffered "severe emotional distress" and, in particular, "was very stressed out, very depressed, very depressed. I was kind of disturbed, actually being strip searched, my wife being incarcerated, pregnant. I was under a lot of stress. I was very depressed, angry." Plaintiff also stated that "[t]imes when police officers strip searched me, I break down and cry that I have exposed [my] body to so many people. Me being strip searched, I don't take that lightly, very offensive, when I have to strip search, that I have to go through that."

The Court recognizes that Jean-Laurent has been unable to locate witnesses to defendants' alleged acts or to provide evidence in support of plaintiff's testimony. The Court also recognizes that plaintiff has not sought medical treatment for any physical or psychological injury he allegedly experienced. However, under the circumstances of this case overall, and drawing all reasonable inferences in plaintiff's favor, the Court declines to conclude as a matter of law that the force defendants exerted during plaintiff's arrest was reasonable as a matter of law, or that plaintiff's injuries were so *de minimis* that they are not compensable as a matter of law under *Heck*. Specifically, if Jean-Laurent's testimony is credited, the Court has determined that a rational fact-finder could find that defendants used excessive force to restrain plaintiff, and that plaintiff suffered compensable injury – including emotional injury – as a result.

For instance, a rational fact-finder could find that defendants intentionally hit plaintiff's head on the car during the arrest and strip search – even though plaintiff was already handcuffed – and that this constituted an objectively unreasonable use of force that resulted in compensable injury. Indeed, in *Maxwell v. City of New York*, the Second Circuit specifically focused on a claim alleging that the police had banged the head of the plaintiff while she was being put into a police car. 380 F.3d 106, 108 (2d Cir. 2004). The

district court in *Maxwell* had granted summary judgment for the defendants and found, among other things, that plaintiff's claim that she "'allegedly scraped her head when being shoved into the car is not sufficient for any reasonable jury to find excessive force claim in this case – minor scrapes, bumps or bruises potentially could occur, often unintended, during any arrest, and an arresting officer can not be held unremittingly liable for every such incident.'" *Id.* at 109 (quoting *Maxwell v. City of New York*, 272 F. Supp. 2d 285, 298 (S.D.N.Y. 2003)). However, the Second Circuit reversed the district court and found the alleged conduct and injury sufficient to require the claim to be submitted to the jury. *Maxwell*, 380 F.3d at 109-10.

In sum, although Jean-Laurent has not alleged or proffered physical injuries as significant as those in *Maxwell*, the Court cannot conclude as a matter of law – particularly in light of plaintiff's claims of emotional injury – that no rational fact-finder could find in plaintiff's favor on the excessive force claim. *See Jean-Laurent v. C.O. Gorden Wilkinson*, 540 F. Supp. 2d 501, 513 (S.D.N.Y. 2008) (denying summary judgment to officers where "there remains a general issue of material fact as to whether Jean-Laurent's constitutional rights were violated during the second strip search and alleged use of excessive force. . . .");[17] *Pierre-Antoine v. City of New York*, No. 04-CV-6987, 2006 U.S. Dist. LEXIS 28963, at *5 (S.D.N.Y. May 9, 2006) (noting that although the lack of severe injury may be considered by a jury as evidence that force was not excessive, it did not entitle defendants to judgment as a matter of law). The Court, therefore, denies defendants' motion for summary judgment on plaintiff's excessive force claim.

## B. Pat-Frisk

As set forth below, the Court agrees with defendants that no reasonable jury could find that Jean-Laurent's pat-frisk was illegal and, therefore, the Court agrees that defendants are entitled to summary judgment on this claim.

As a threshold matter, because it is undisputed that Jean-Laurent was handcuffed and under arrest at the time of his pat-frisk, the Court analyzes this pat-frisk pursuant to the standard the Supreme Court has set forth for searches made incident to lawful arrests. Specifically, as the Supreme Court held in *Chimel v. California* with respect to such searches, "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." 395 U.S. 752, 762-63 (1969). Thus, it is axiomatic that a lawful arrest "establishes the authority to search" and such a search is "reasonable" under the Fourth Amendment.[18] *United States*

---

[17] The Court is aware that Jean-Laurent is the plaintiff in this action in the Southern District of New York as well.

[18] Here, the lawfulness of Jean-Laurent's arrest is not in question because – as the Court set forth *supra* – he was convicted and that conviction withstood his multiple appeals and *habeas* proceedings. *See Weyant*, 101 F.3d at 852 (explaining that conviction upheld on appeal is "conclusive evidence" of probable cause to arrest) (citation and quotation marks omitted).

*v. Robinson*, 414 U.S. 218, 235 (1973). The police, therefore, are not required to have probable cause to believe that an arrestee in fact has weapons, contraband, or evidence on his person in order to conduct a search incident to arrest. *See United States v. Chadwick*, 433 U.S. 1, 14 (1977), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565, 575-79, (1991). Here, with respect to the pat-frisk search made incident to Jean-Laurent's arrest, plaintiff sets forth no evidence suggesting that the search was conducted in a manner out of the ordinary. Indeed, at his deposition, Jean-Laurent merely stated that he was "hemmed up against the car and . . . pat frisked" by Hennessy. (Pl.'s Dep. at 134.) The Court, therefore, concludes that the pat-down incident to arrest conducted by Hennessy was reasonable as a matter of law under the Fourth Amendment. Consequently, the Court grants defendants' motion for summary judgment with respect to the legality of the pat-frisk.

(2) Strip Search

For the reasons set forth below, the Court denies defendants' motion for summary judgment with respect to the legality of Jean-Laurent's alleged public strip search.

a. Legal Standard

1. The *Bell* Test

As the Supreme Court recognized in *Bell v. Wolfish*, the "Fourth Amendment prohibits only unreasonable searches." 441 U.S. 520, 558 (1979). In *Bell*, the Supreme Court addressed the reasonableness of strip searches and, in particular, held that courts must apply a "test of reasonableness" in

analyzing any such search. *Id.* at 559. Specifically, the Supreme Court observed:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.*

With respect to the prong of the *Bell* test relating to the "justification for initiating" the strip search, the Second Circuit has held that a "'strip search is by its very nature a highly intrusive invasion,' and, as such, requires particular justification." *Wilson v. Aquino*, No. 05-7053-cv, 2007 U.S. App. LEXIS 12285, at *3-*4 (2d Cir. May 24, 2007) (citation omitted) (quoting *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991); *see also Bolden v. Village of Monticello*, 344 F. Supp. 2d 407, 417 (S.D.N.Y. 2004) ("A strip search – even without any type of body cavity examination – has always been viewed as an extraordinary invasion of privacy requiring consideration of the 'totality of circumstances' and analysis under the Bell factors for reasonableness."). Thus, the Second Circuit "has exhibited considerable regard for the right of any person – even a person who has been lawfully arrested . . . – not to be subjected to a strip search unless there exists particularized suspicion that an individual is secreting contraband." *Bolden*,

344 F. Supp. at 417 (collecting cases); *see, e.g., Wilson*, 2007 U.S. App. LEXIS 12285, at *5 ("In this case . . . two routine searches of Wilson's person at the arrest scene failed to reveal his possession of any weapons or contraband. Defendants' insistence that they, nevertheless, thought Wilson might be concealing drugs on his person and might be able to destroy those drugs even while handcuffed was, at best, speculative. . . . Under these circumstances, no reasonable jury could conclude, even from defendants' own version of events, that their justification for or manner of conducting the challenged strip search was reasonable."); *Travis v. Village of Dobbs Ferry*, 355 F. Supp. 2d 740, 753 (S.D.N.Y. 2005) ("Strip searches may not be performed on the basis of mere suspicion or for investigatory purposes in the hope of recovering evidence that will corroborate a hunch.").

Moreover, with respect to the prong of the *Bell* test relating to "the place in which [the strip search] is conducted, the Second Circuit has denied summary judgment to police officers in part because the strip search in question allegedly took place in public. *See Rivera*, 928 F.2d at 606-07 (reversing district court's grant of summary judgment to police officers on Fourth Amendment claim in part because officers "perform[ed] a publicly observable strip search"); *see also Campbell v. Police Officer David Fernandez*, 54 F. Supp. 2d 195, 198 (S.D.N.Y. 1999) ("There is a disputed issue of fact concerning just how public the area of the premises where plaintiff was searched was – the officers assert that plaintiff was shielded from public view, plaintiff and Mr. White say otherwise – and that disputed fact is a *material* fact, as the reasonableness of defendants' conduct may depend in significant part on just how private or public

the area was. This particular aspect of plaintiff's claim, therefore, must be decided by a jury."); *see generally Campbell v. Miller*, 499 F.3d 711, 718 (7th Cir. 2007) (reversing jury verdict in favor of police officers on Fourth Amendment claim based on public nature of strip search and noting that "[c]ourts across the country are uniform in their condemnation of intrusive searches performed in public") (collecting cases).

b. Application

The Court is aware that defendants deny that they or John Doe Officer publicly strip searched Jean-Laurent. However, as set forth *supra*, Jean-Laurent testified that defendants held him down while John Doe Officer strip searched him in the street in front of several witnesses. Moreover, according to plaintiff, he was handcuffed at the time and had already been subjected to a pat-frisk that failed to uncover any drugs or weapons. Drawing all reasonable inferences from this testimony in plaintiff's favor, the Court declines to conclude as a matter of law that the public strip search did not occur or was justified by a particularized suspicion that plaintiff was secreting drugs or weapons. Further, given plaintiff's testimony regarding the physical pain and emotional injury the public strip search allegedly caused him, the Court declines to conclude as a matter of law that the alleged strip search did not cause plaintiff compensable injuries. In other words, if plaintiff's version of events is credited, a rational jury could find – particularly in light of plaintiff's testimony that defendants held plaintiff down during a strip search that took place on a public street – that defendants actively participated in an unjustified strip search and that plaintiff

suffered compensable injuries as a result.[19]

In any event, even if defendants were not found to have actively participated in the strip search by restraining plaintiff as John Doe Officer conducted the search, defendants could also be found liable, depending on how the jury resolves the material issues of disputed fact, for failure to intervene in John Doe Officer's alleged unlawful search. It is well-settled that "[a] law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (collecting cases). In particular, the Second Circuit has held:

> An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, *see O'Neill*, 839 F.2d at 11-12; (2) that a citizen has been unjustifiably arrested, *see Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982); or (3) that any constitutional violation has been committed by a law enforcement official, *see*
>
> *O'Neill*, 839 F.2d at 11. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. *See id.* at 11-12. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.

*Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *see also Jean-Laurent*, 540 F. Supp. 2d 501 at 512 (citing *O'Neill* standard and noting that "a police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known"); *Diaz v. City of New York*, No. 00-CV-2944, 2006 U.S. Dist. LEXIS 93923, at *28 (E.D.N.Y. Dec. 29, 2006) ("In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."). Here, under the circumstances described above – and, in particular, if plaintiff's testimony that defendants held plaintiff down while John Doe Officer strip searched him in public without justification is credited – a reasonable juror could find that defendants had reason to know that plaintiff's constitutional rights were being violated, that defendants had sufficient opportunity to intercede, and that plaintiff suffered compensable injury as a result, including

---

[19] The Court is aware of defendants' emphasis on plaintiff's testimony that – as described *supra* – he has been strip searched numerous times. Thus, defendants argue, plaintiff would merely be entitled to "nominal damages" if he prevails at trial. (Defs.' Mem. at 9.) However, this argument is relevant only to the level of damages to which defendant may be entitled, and does not provide grounds for summary judgment.

emotional injury.[20] *See Smith v. Taylor*, No. 03-0202-pr, 2007 U.S. App. LEXIS 4702, at *4 (2d Cir. Feb. 26, 2007) (reversing district court's grant of summary judgment to defendant officers on plaintiff's strip frisk claim in part because "[t]here is also a material issue of fact as to the amount of force the officers used. While the district court held that '[Smith] . . . states that, at most, officers turned him around to face the wall and placed a hand on his neck or shoulder,' Smith actually claimed that he had been 'physically turned . . . around' and 'held by the back of his neck by one officer and bent over forward by the other three officers'").[21]

---

[20] Consequently, because the record contains material issues of fact regarding defendants' failure to intervene in the alleged strip search, the Court rejects defendants' argument that they are not liable for the search because the unidentified John Doe Officer actually conducted the search. In the context of claims for failure to intervene, a "plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Jeffreys v. P.O. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), *aff'd* 426 F.3d 549 (2d Cir. 2005) (collecting cases). As set forth above, the record contains material issues of fact regarding defendants' active participation in the public strip search and, at the very least, in their failure to intercede in that search. Under these circumstances, the failure to identify John Doe Officer does not entitle the other defendants to summary judgment.

[21] The Court is aware that Jean-Laurent did not bring a separate cause of action for failure to intervene. However, for the reasons discussed above, such a cause of action is clearly implied by the allegations in the complaint and in the other papers plaintiff has submitted to the Court.

## VI. QUALIFIED IMMUNITY

Defendants argue that, even if they used excessive force in arresting plaintiff or took part in an illegal strip search, they are entitled as a matter of law to qualified immunity from suit. For the reasons set forth below, the Court disagrees with defendants and finds that the issue of qualified immunity must be considered by a jury.

### A. Legal Standard

According to the Second Circuit, government actors may be shielded from liability for civil damages if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *see also Fielding*, 2007 U.S. App. LEXIS 28939, at *4 ("The police officers, in turn, are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). "A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . The unlawfulness must be apparent." *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998) (citations and quotation marks omitted).

As the Second Circuit has also noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (quotation marks omitted)). Thus, qualified immunity is

not merely a defense, but is "an entitlement not to stand trial or face the other burdens of litigation." *Forsyth*, 472 U.S. at 526. Accordingly, courts should determine the availability of qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

With respect to the summary judgment stage in particular, the Second Circuit has held that courts should cloak defendants with qualified immunity at this juncture "only 'if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff[] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.'" *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) (quoting *Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir. 1996)); *see also Weyant*, 101 F.3d at 858 (holding that where police officers' version of facts is "sharply disputed," "the matter of the officers' qualified immunity therefore cannot be resolved as a matter of law"); *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) ("Though [qualified] immunity ordinarily should be decided by the court, that is true only in cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required.") (citations and quotation marks omitted); *Stancuna v. Sherman*, No. 3:07CV00491, 2008 U.S. Dist. LEXIS 49059, at *18 (D. Conn. June 27, 2008) ("Here, the court finds that summary judgment on qualified immunity grounds is inappropriate. As the Second Circuit has held, [w]hen a motion for summary judgment is made in the context of a qualified

immunity defense, the question of whether the factual disputes are material is even more critical. As noted above, there are issues of material fact in this case that this court may not decide. These issues of fact are critical to determining whether Sherman was operating under a reasonable belief as to what kind of search he was permitted to conduct.") (citation and quotation marks omitted).

Here, it is indisputable that Jean-Laurent's right to be free of unreasonable search and seizure under the Fourth Amendment – both with respect to excessive force and a public strip search – is clearly established. Thus, the relevant inquiry is whether it was objectively reasonable – as a matter of law – for defendants to believe that their conduct did not violate plaintiff's rights. After carefully reviewing the record, and drawing all reasonable inferences in plaintiff's favor, the Court declines to conclude as a matter of law that it was objectively reasonable for defendants to believe that they were not violating plaintiff's rights. In particular, in light of Jean-Laurent's testimony, if plaintiff's version of events is credited – namely, that with no basis for suspecting that plaintiff was secreting drugs or weapons, and after plaintiff was already handcuffed, pat-frisked, and revealed to have no weapons on his person, defendants slammed plaintiff's head against the car and held him down while he was strip searched in the street in front of several witnesses, causing him physical pain and emotional injury – it would be objectively unreasonable for defendants to believe that they were not violating plaintiff's constitutional rights. The Court, therefore, denies defendants' motion for summary judgment on qualified immunity grounds. *See Wilson*, 2007 U.S. App. LEXIS 12285, at *6-*7 ("It has long been clearly established that strip searches require particular justification.

Where, as in this case, defendants acknowledge that they had twice conducted a routine search of the defendant that yielded no weapons or contraband and that no dog alert or other circumstance supported a reasonable belief that the defendant was nevertheless still concealing drugs on his person, and where defendants advance no reason for needing to transport Wilson to a private office rather than the police precinct for any further examination, we agree with the district court that it was objectively unreasonable for the defendants to think that their justification for and method of conducting the challenged strip search was lawful.") (citations omitted); *Jean-Laurent*, 2008 U.S. Dist. LEXIS 30592, at *30 ("Here, material issues of fact exist concerning the second strip search and the alleged use of excessive force that are material to a determination of reasonableness. Such issues include the reasonableness of the second strip search, the amount of force used by Wilkinson, [and] the extent of the injuries suffered by Jean-Laurent. . . . Therefore, Defendants' motion for summary judgment against Jean-Laurent's claims on qualified immunity grounds is denied."); *Johnson v. City of New York*, No. 05-CV-2357, 2006 U.S. Dist. LEXIS 56704, at *15 (S.D.N.Y. Aug. 14, 2006) ("[I]t could not be objectively reasonable for [the officer] to have believed that the use of gratuitous force beyond what is necessary to subdue an individual during a search is allowed under the law."); *Campbell*, 54 F. Supp. 2d at 198 ("Defendants' claim that they are entitled to qualified immunity must also go to trial. The question of whether, in the circumstances presented, it was objectively reasonable for the officers to strip a man in a public place and force him to expose his most intimate body parts to public view is clearly an issue of fact that is reserved for the jury."); *Bolden*, 344 F. Supp.

2d at 421 ("Plaintiffs' allegations fairly admit of the inference that, at least in some of the instances alleged, Deitz and O'Connor witnessed other officers (or each other) performing acts that would constitute constitutional violations, either because they constituted excessive force or because they were unreasonable strip searches. If those allegations prove true, defendants are not entitled to qualified immunity. If the allegations are not true, of course, there will be a verdict for the defendants on the merits.").[22]

In sum, defendants essentially contend that

---

[22] The Court notes that, in order to determine the availability of the qualified immunity defense in this case at trial, the Court is prepared to follow the procedures set forth by the Second Circuit in *Zellner v. Summerlin*, 494 F.3d 344, 367-68 (2d Cir. 2007). Specifically, although "the ultimate question of whether it was objectively reasonable for [defendants] to believe that [their] conduct did not violate a clearly established right, i.e., whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court," *id.* at 368, the jury must first "resolve[] any disputed facts that are material to the qualified immunity issue." *Id.* Further, "[t]o the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that the jury be asked the pertinent question. *Id.* (citations omitted) (noting that "if the defendant does not make such a request, he is not entitled to have the court, in lieu of the jury, make the needed factual finding"). In particular, "'the jury should decide these issues on special interrogatories.'" *Id.* (quoting *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990). Once the jury has determined these factual issues, the Court will – if necessary – afford defendants an additional opportunity to renew their motion with respect to qualified immunity. *See, e.g., Zellner*, 494 F.3d at 364.

plaintiff's uncorroborated version of events and claims of damages are so lacking in credibility that they should be rejected by the Court. However, the Court cannot resolve these credibility issues on summary judgment. Rather, these critical factual disputes, which hinge on the credibility of witnesses, must be resolved by the jury.

## VII. STATE LAW CLAIMS

Jean-Laurent also brings causes of action under New York State law for intentional infliction of emotional distress, conspiracy to violate his civil rights, and conversion (or "deprivation of money"). Defendants argue that these claims are precluded by plaintiff's conceded failure to file a timely notice of claim pursuant to New York General Municipal Law Sections 50-e and 50-i, *see Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (holding that in federal court, state notice-of-claim statutes apply to state law claims), and that, in any event, all of these claims fail on the merits. As set forth below, the Court disagrees with defendants that plaintiff was required to submit a Notice of Claim for these causes of action. The Court, therefore, has considered all of these claims on the merits and, as set forth below, has found that genuine issues of material fact preclude summary judgment on each claim.

### A. Notice of Claim

Sections 50-e and 50-i require a party asserting a state law tort claim against a municipal entity or its employees acting in the scope of their employment to file a notice of claim within ninety days of the incident giving rise to the claim and requires the plaintiff to commence the action within a year and ninety days from the date on which the cause of action accrues. *See* N.Y. Gen. Mun. Law §§ 50-e, 50-i. "Under New York law, notice of claim is a statutory precondition to filing suit against the City or its employees." *Harris v. Bowden*, No. 03 Civ. 1617, 2006 U.S. Dist. LEXIS 12450, at *22 (S.D.N.Y. Mar. 23, 2006). "A plaintiff's failure to file a notice of claim requires dismissal of pendent state tort claims against the City or its employees in a federal civil rights action." *Robinson v. Matos*, No. 97 Civ. 7144, 1999 U.S. Dist. LEXIS 5447, at *3 (S.D.N.Y. Apr. 19, 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)). Furthermore, the Court does not have jurisdiction to allow plaintiff to file a late notice of claim. *Corcoran v. N.Y. Power Auth.*, No. 95 Civ. 5357, 1997 U.S. Dist. LEXIS 14819, at *19 (S.D.N.Y. Sept. 26, 1997); *see also* N.Y. Gen. Mun. Law § 50(e)(7) ("All applications under this section shall be made to the supreme court or to the county court.").

In his opposition papers, Jean-Laurent concedes that he failed to timely submit a Notice of Claim and, therefore, "he acknowledges that he [may] be barred from maintaining a cause of action against the defendants in their official capacities." (Pl.'s Opp. at 16.) Plaintiff contends, however, that he is also bringing suit against defendants for actions outside of the scope of their employment and, thus, need not have submitted a Notice of Claim. In particular, plaintiff argues that he is not required to submit a Notice of Claim for causes of action for which the Corporation Counsel is not required to indemnify defendants and urges the Court to find that plaintiff's pendent state claims fall into this category. (Pl.'s Opp. at 16.)

As set forth below, the Court agrees with plaintiff with respect to the Notice of Claim requirement. Specifically, pursuant to Section 50-k of the General Municipal Law, the

Corporation Counsel is required to indemnify a municipal employee if his liability arose from conduct "within the scope of his employment and in the discharge of his duties," as long as the employee was "not in violation of any rule or regulation of his agency at the time the alleged damages were sustained" and the injury was not caused by "from intentional wrongdoing or recklessness on the part of the employee." N.Y. Gen. Mun. Law § 50-k(3). Here, if defendants were found liable for conspiracy, intentional infliction of emotional distress, or conversion[23], defendants would be in violation of their department's rules and regulations and, under the circumstances of this case, would have engaged in intentional wrongdoing. Thus, with respect to these causes of action, the Court declines to conclude as a matter of law that the Corporation Counsel would be required to indemnify defendants and, consequently, that plaintiff was required to file a Notice of Claim. *See, e.g., Brenner v. Heavener*, 492 F. Supp. 2d 399, 404-05 (S.D.N.Y. 2007) (denying defendant police officers summary judgment on state claims for excessive force and intentional infliction of emotional distress where plaintiff had failed to file a Notice of Claim because "notice prerequisite does not apply to claims asserted against municipal employees in their individual capacities that allege injuries resulting from intentional wrongdoing or recklessness-misconduct for which the City has no obligation to indemnify"); *Hemrie v. City of New York*, No. 96 Civ. 213, 2000 WL

1234594, at *2-*3 (S.D.N.Y. Aug. 31, 2000) (denying defendant officers summary judgment on, *inter alia*, plaintiff's claim for intentional infliction of emotional distress – even though plaintiff failed to file a Notice of Claim with respect to that claim – because defendants failed to establish that "the individual defendants meet the requirements for indemnification under [Section 50-k]"); *Lewis v. City of New York*, No. 95 Civ. 5351 (PKL) (MHD), 1999 U.S. Dist. LEXIS 20008, at *86-*89 (S.D.N.Y. Nov. 18, 1999), *adopted in its entirety* No. 95 Civ. 5351, 1999 U.S. Dist. LEXIS 20008 (S.D.N.Y. Dec. 22, 1999) (noting that although plaintiff was required to file a Notice of Claim for a negligence cause of action, "[t]his result does not follow, however, for plaintiff's claim of intentional infliction of emotional distress, since it is inconsistent with at least one of the statutory requirements for municipal indemnification. If the trier of fact were to find any of the individual defendants liable for this tort, that verdict would necessarily encompass a finding that that defendant had engaged in intentional or reckless wrongdoing, since, to prevail on such a claim, the plaintiff must demonstrate that the defendant acted recklessly or with the intent to cause harm. Necessarily, then, the claim does not trigger a right of indemnification for the individual defendant, or a requirement of administrative exhaustion insofar as it is asserted against that defendant.") (citations omitted); *Grasso v. Schenectady County Public Library*, 817 N.Y.S.2d 186, 189-90 (N.Y. App. Div. 2006) (refusing to dismiss claims against individual defendants, even though plaintiff failed to file a Notice of Claim, because conduct alleged in complaint "amounts to intentional torts").

The Court, therefore, has considered each of these claims on the merits and, as set forth below, concludes that the causes of action for

---

[23] As the Court explains *infra*, Jean-Laurent's claim for conversion, or "deprivation of money," relates to his allegation that defendants recovered more money from plaintiff than defendants disclosed, and that defendants wrongfully and fraudulently kept that money.

intentional infliction of emotional distress, conspiracy, and conversion survive summary judgment.

## B. Intentional Infliction of Emotional Distress

In order to assert a valid claim for intentional infliction of emotional distress under New York law, a plaintiff must demonstrate "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)). Further, New York sets a high threshold for conduct that is "extreme and outrageous" enough to constitute intentional infliction of emotional distress. *See id.* The conduct alleged must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (quoting *Fischer v. Maloney*, N.E.2d 1215, 1217 (N.Y. 1978)). Here, after carefully reviewed the record in this case – including Jean-Laurent's testimony that he was slammed against his car while handcuffed and publicly strip searched with no justification – the Court finds that there are genuine issues of material fact that preclude summary judgment on the claim for intentional infliction of emotional distress. The Court, therefore, finds this claim survives summary judgment. *Mejia v. City of New York*, 119 F. Supp. 2d 232, 286-87 (E.D.N.Y. 2000) (upholding intentional infliction of emotional distress claim on summary judgment where plaintiff alleged, *inter alia*, an "unjustified strip search").

## C. Conspiracy

With respect to conspiracy, "[s]ince New York does not recognize an independent tort of civil conspiracy, such a cause of action is available only if there is evidence of an underlying actionable tort." *Baker v. R.T. Vanderbilt Co.*, 260 A.D.2d 750, 752-53 (N.Y. App. Div. 1999) (citations omitted). A claim of civil conspiracy under New York law "requires '(i) an agreement between the conspirator and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy.'" *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 94 F. Supp. 2d 491, 511 (S.D.N.Y. 2000) (quoting *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 482 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)); *see also AM Cosmetics, Inc. v. Solomon*, 67 F. Supp. 2d 312, 322 (S.D.N.Y. 1999) ("Plaintiffs may plead the existence of a conspiracy in order to connect the actions of the individual Defendants with an actionable, underlying tort, and establish that those actions were a part of a common scheme.") (citing *Litras v. Litras*, 254 A.D.2d 395, 396 (N.Y. 1998)); *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981) ("The allegation 'is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.") (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956)). "Allegations of a civil conspiracy, therefore, are proper only for the purpose of establishing joint liability by co-participants in tortious conduct." *John's Insulation, Inc. v. Siska Constr. Co.*, 774 F. Supp. 156, 162 (S.D.N.Y. 1991). Here, after carefully reviewing the record in this case – including Jean-Laurent's testimony that defendants, together, held plaintiff down while John Doe Officer strip searched him – the Court concludes as a matter of law that there are genuine issues of material fact that

preclude summary judgment on the claim for conspiracy. The Court, therefore, finds that this claim survives summary judgment.

## D. Conversion, or "Deprivation of Money"

Plaintiff does not cite a statute or specific cause of action under which he is proceeding with respect to his claim for "deprivation of money." Essentially, however, plaintiff claims that defendants lied about the amount of money they recovered from plaintiff, and wrongfully retained a portion of this money. These allegations most closely resemble a claim for conversion under New York law. "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (N.Y. 2006).

Here, the Court is aware that defendants have proffered documentary evidence corroborating the amount of money defendants claim they recovered from plaintiff. (*See* Defs.' Exh. C, D, F.) Nevertheless, if plaintiff's version of events is credited – namely, that plaintiff possessed $3,240 at the time of his arrest for the purpose of starting a clothing business, and that defendants lied about having recovered only $1,848, thus stealing a portion of plaintiff's money – a rational jury could find that plaintiff met the elements of conversion. Under these circumstances, the Court has determined that genuine issues of material fact preclude summary judgment on plaintiff's conversion claim. The Court, therefore, denies defendants summary judgment on this claim.

## VIII. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, the Court denies defendants summary judgment with respect to plaintiff's claims of: (1) excessive force; (2) unreasonable search and seizure in conjunction with plaintiff's alleged public strip search; and (3) plaintiff's claims under New York law for intentional infliction of emotional distress, conspiracy, and "deprivation of money," or conversion. The motion is granted on all other grounds.[24]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 1, 2008
Central Islip, New York

\* \* \*

---

[24] As stated *supra*, the Court has reviewed plaintiff's motion to amend the complaint and, for the reasons set forth below, denies this motion. Essentially, plaintiff proposes amending the complaint to request a declaratory judgment from the Court that his conviction is "null and void" on the grounds that he only pleaded guilty because of the ineffective assistance of counsel. (Affirmation in Support of Amended Compl. ¶¶ 12-13.) However, as stated *supra*, the Supreme Court's doctrine in *Heck* also bars the Court from determining the validity of plaintiff's guilty plea in a Section 1983 action. Thus, permitting plaintiff to amend the complaint to request such relief would be futile. Plaintiff's motion to amend the complaint, therefore, is denied.

Plaintiff is represented by Phillip Jean-Laurent of Cape Vincent Correctional Facility, Route 12E, P.O. Box 739, Cape Vincent, New York, 13618. Defendants are represented by Morgan David Kunz, Esq. of the New York City Law Department, 100 Church Street, New York, New York, 10007