------------------------------------X

PHILLIP JEAN-LAURENT,

               Plaintiff,

     -against-               **MEMORANDUM & ORDER**

P.O. DAVID HENNESSY; P.O. JOHN DOE;     05-CV-1155(KAM)(LB)
SGT. PAUL O'DONNELL,

               Defendants.

------------------------------------X

**MATSUMOTO, United States District Court Judge:**

      *Pro se* plaintiff Phillip Jean-Laurent brought this action against New York City Police Department Officers David Hennessy and "John Doe," and Sergeant Paul O'Donnell, alleging violations of his federal rights pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, and New York State tort law in connection with his arrest on June 11, 2002. Pending before the court are the parties' motions *in limine* to preclude certain evidence at trial pursuant to Federal Rules of Evidence 401, 402, 403, 404, 602, 608, 609, 801, 802 and 902. For the following reasons, the court grants in part and denies in part the parties' motions.

<u>BACKGROUND</u>

**I.   Procedural History**

      Plaintiff commenced this action *pro se* in the Southern District of New York on February 2, 2005. (ECF No. 4-3, Initial Complaint ("Init. Compl.").) The case was transferred to the

Eastern District of New York on February 24, 2005 because the underlying events occurred in this judicial district. (*See* ECF No. 4, Transfer Order.) Plaintiff filed an Amended Complaint on December 5, 2005. (ECF No. 22, Amended Complaint ("Am. Compl.").) On August 1, 2008, Judge Bianco denied in part and granted in part defendants' motion for summary judgment. (ECF No. 79, Memorandum and Order dated 8/1/2008.) The claims that survived defendants' motion for summary judgment were those alleging (1) a federal claim for excessive force; (2) a federal claim for unreasonable search and seizure as to plaintiff's alleged public strip search; and (3) state law claims of intentional infliction of emotional distress, conspiracy and "deprivation of money," or conversion, under New York law. (*Id.*)

Discovery proceeded before Judge Bloom, and was closed on December 17, 2009, except with respect to identification of plaintiff's witnesses. (ECF No. 127, Order dated 12/17/2009.) In an abundance of caution, Judge Bloom granted one last opportunity, until October 10, 2010, for plaintiff to properly identify all witnesses on his witness list. (*Id.*) On January 31, 2011, the parties submitted their Second Revised Joint Pre-Trial Order, which included several stipulations of fact. (ECF No. 144 ("Sec. Rev. JPTO") at 5.)

On August 11, 2011, the parties filed the motions *in limine* presently before the court. (ECF No. 152, Defendants' Pretrial Submissions Concerning Matters To Be Resolved *in Limine* ("Defs.' Mem."); ECF No. 155, Plaintiff's Motion *in Limine* ("Pl.'s Mem.").) Defendants filed a memorandum of law in opposition to plaintiff's motions *in limine* (*see* ECF No. 156, Defendants' Opposition to Plaintiff's Motion *in Limine* ("Defs.' Opp'n")), but plaintiff did not file an opposition to defendants' motions. Trial is scheduled to begin on November 14, 2011. The court assumes the parties' familiarity with the underlying facts of the instant case. *See Jean-Laurent v. Hennessy*, No. 05-cv-1155, 2008 WL 3049875 (E.D.N.Y. Aug. 1, 2008).

## DISCUSSION

### II. Standard for a Motion *in Limine*

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (same); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996) (same). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179,

181 (S.D.N.Y. 2001). Indeed, courts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287. Further, the court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*, 469 U.S. at 41.

### III. Admissibility of Evidence Pursuant to the Federal Rules of Evidence

#### A. General Relevance Provisions

The Federal Rules of Evidence govern the admissibility of evidence at trial. Rule 402 requires that evidence be relevant to be admissible. Fed. R. Evid. 402. Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Therefore, the court's determination of what constitutes "relevant evidence" is guided by the nature of the claims and defenses in the cause of action.

##### 1. Relevant Evidence in Excessive Force Claims

The motions *in limine* at bar primarily relate to

plaintiff's excessive force and strip search claims.[1]  In an
excessive force claim in violation of the Fourth Amendment,
"[t]he question is whether the officers' actions are
'objectively reasonable' in light of the facts and circumstances
confronting them, without regard to their underlying intent or
motivation." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d
Cir. 2005) (internal citations omitted).  Therefore, evidence
that bears on the objective reasonableness of the officers'
conduct is relevant to the excessive force claim in the present
case.  An analysis of reasonableness under the Fourth Amendment
"requires careful attention to the facts and circumstances of
each particular case, including the severity of the crime at
issue, whether the suspect poses an immediate threat to the
safety of the officers or others, and whether he is actively
resisting arrest or attempting to evade arrest by flight."
*Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v.
Garner*, 471 U.S. 1, 8-9 (1985)).

> **2. Relevant Evidence in Claims Alleging Unreasonable
> Strip Search**

Before a person can be lawfully subjected to a strip
search, the "Fourth Amendment requires an individualized
'reasonable suspicion that [a misdemeanor] arrestee is
concealing weapons or other contraband based on the crime

---

[1] For reasons discussed *infra* in section V.P.2., plaintiff's claim asserting
intentional infliction of emotional distress is dismissed as barred by the
statute of limitations.

charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.'" *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (quoting *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986)). Therefore, evidence relevant to the strip search claim bears on whether defendants had the requisite "reasonable suspicion," which the Second Circuit has defined as "something stronger than a mere hunch, but something weaker than probable cause." *Varrone v. Bilotti,* 123 F.3d 75, 79 (2d Cir. 1997) (internal quotation marks and citations omitted). Determination of the reasonableness of defendants' suspicion "turns on an objective assessment of the . . . facts and circumstances confronting [the searching officer] at the time." *Hartline*, 546 F.3d at 100 (quoting *Maryland v. Macon,* 472 U.S. 463, 470-71 (1985) (internal quotation marks and citations omitted)).

## B. Application of Probative-Prejudice Analysis

In addition to the relevancy of the evidence that the parties seek to offer or exclude in their motions, several Rules of Evidence bear on the court's determination of admissibility. Each of the Rules relevant to the pending motions, discussed below, are subject to the probative-prejudice balancing analysis provided in Federal Rule of Evidence 403. Rule 403 permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury." Fed. R.
Evid. 403. The district court has broad discretion in making
decisions under Rule 403's probative-prejudice balancing
analysis. *Fiacco v. City of Rensselaer*, 783 F.2d 319, 327-28
(2d Cir. 1986). "In making a Rule 403 determination, courts
should ask whether the evidence's proper value 'is more
than matched by [the possibility] . . . that it will divert the
jury from the facts which should control their verdict.'"
*Bensen v. Am. Ultramar, Ltd.*, No. 92-CIV-4420, 1996 WL 422262,
at *6 (S.D.N.Y. July 29, 1996) (quoting *United States v.
Krulewitch*, 145 F.2d 76, 80 (2d Cir. 1944)). The court applies
the foregoing analysis to the parties' pending motions.

## IV. Plaintiff's Motions *in Limine*

The court notes at the outset that a number of
plaintiff's motions *in limine* directly correspond to motions *in
limine* submitted by defendants. Therefore, where appropriate,
the court has considered defendants' motions *in limine* with
their memorandum of law in opposition to plaintiff's motions *in
limine*.

### A. Admissibility of Evidence of Prior Felony Convictions That Are More Than Ten Years Old

Plaintiff seeks to preclude the introduction of
evidence of his prior felony convictions that are more than ten
years old. (Pl.'s Mem. at 1-2.) Under Federal Rule of Evidence

609(b), such evidence is inadmissible unless (a) "the court determines, in the interests of justice, that the probative value of the conviction . . . substantially outweighs its prejudicial effect," and (b) the proponent of such evidence gives sufficient written notice of intent to introduce the evidence. Fed. R. Evid. 609(b).

Defendants have not indicated any intention to introduce evidence of prior felony convictions dating back more than ten years. Even if defendants had sought to introduce such evidence, however, they would be barred for failure to comply with the notice requirement. Accordingly, plaintiff's motion *in limine* is granted.

## B. Admissibility of Plaintiff's Prior Misdemeanor Convictions

Plaintiff seeks to preclude evidence of his prior misdemeanor convictions, including any mention of plaintiff's August 13, 2002 guilty plea and conviction for criminal possession of a controlled substance in the seventh degree ("misdemeanor possession conviction"), which arose from the June 11, 2002 arrest. (Pl.'s Mem. at 1–2, 6–8.) For the reasons set forth below, the court grants plaintiff's motion *in limine*.

### 1. Prior Misdemeanor Conviction Arising from the June 11, 2002 Arrest

Plaintiff makes several arguments for preclusion of the misdemeanor possession conviction. First, he seeks to

preclude introduction of "Queens County Criminal Court
proceeding transcripts" as evidence of his August 13, 2002
guilty plea, conceding that the evidence is "marginally
relevant" to the circumstances of his arrest, but arguing that
"its probative value is substantially outweighed by the
prejudicial effect" on plaintiff.  (Pl.'s Mem. at 6.)  Plaintiff
further asserts that because "defendants' actions were not
based--admittedly--on any knowledge that plaintiff possessed the
controlled substance they recovered," the subsequent misdemeanor
possession conviction is irrelevant.[2]  (Pl.'s Mem. at 7.)
Finally, plaintiff contends that because the misdemeanor
possession conviction did not involve dishonesty or false
statements, it is irrelevant and inadmissible under Federal Rule
of Evidence 609(a)(2).[3]  (Pl.'s Mem. at 1-2, 7.)

Although defendants do not seek admission of the
entire Queens Criminal Court proceeding transcripts, defendants

---

[2] The case on which plaintiff chiefly relies for this argument, *Dallas v.
Goldberg*, 143 F. Supp. 2d 312 (S.D.N.Y. 2001), is inapposite.  First, *Dallas*
involved a false arrest claim, not a strip search claim.  *See id.* at 317.
Second, *Dallas* discussed whether evidence was relevant to a finding of
"probable cause" (*see id.*), which is a higher standard than the "reasonable
suspicion" standard against which strip search claims are evaluated.  *See
Varrone*, 123 F.3d at 79 (the reasonable suspicion that must support strip
search is "something stronger than a mere hunch, but something weaker than
probable cause") (internal citations and quotation marks omitted).

[3] In his motion papers, plaintiff references Federal Rule of Evidence
609(a)(1) as his basis for precluding prior misdemeanor evidence, but his
arguments reflect reasoning under Rule 609(a)(2).  The court notes that Rule
609(a)(1) does not apply to this analysis because that subsection addresses
only convictions punishable by imprisonment "in excess of one year," and
plaintiff's conviction, a class A misdemeanor under New York Penal Law
§ 220.03, is punishable by imprisonment "not [to] exceed one year" under New
York Penal Law § 70.15.

advance numerous arguments in favor of introducing evidence of plaintiff's misdemeanor possession conviction in their own motion *in limine* (*see* Defs.' Mem. at 11-14) and in their opposition memorandum (*see* Defs.' Opp'n at 6-8, 13-16).  Among other arguments, defendants contend that the conviction is relevant under Rule 402 because the facts of (1) plaintiff's actual possession of 26 bags of crack cocaine and (2) his attempt to conceal the bags in his buttocks as defendants approached his car, bear on the circumstances surrounding the alleged strip search and whether defendants were reasonable in suspecting that plaintiff was concealing contraband.  (Defs.' Mem. at 12-13; Defs.' Opp'n at 13-15.)  Defendants add that they would be unfairly prejudiced if evidence of the misdemeanor possession conviction were excluded "because the jury may infer that the [underlying] stop and arrest were ultimately invalid." (Defs.' Opp'n at 7.)  Defendants further argue that evidence of the conviction would cause little, if any, prejudice in light of evidence of plaintiff's prior felony convictions.[4]  (Defs.' Mem. at 13.)  Finally, defendants point out that evidence of the misdemeanor possession conviction is admissible because plaintiff stipulated to the fact of that conviction in the

---

[4] This argument lacks merit because, as discussed *infra* in Section IV.E., the court grants plaintiff's motion *in limine* to exclude evidence of his prior felonious assault conviction.

parties' Second Revised Joint Pre-Trial Order. (Defs.' Opp'n at 13; Sec. Rev. JPTO at 5.)[5]

The court finds that evidence of plaintiff's misdemeanor possession conviction is irrelevant and therefore inadmissible pursuant to Federal Rule of Evidence 402. As this court found in *Stephen v. Hanley*, No. 03-CV-6226, 2009 WL 1471180, at *4 (E.D.N.Y. May 21, 2009), a plaintiff's subsequent conviction for criminal possession of a controlled substance following his arrest is "irrelevant to whether the [arresting] officers' actions were objectively reasonable before and during the course of the incident at issue" in an excessive force case.

Similarly, the court finds that plaintiff's later misdemeanor possession conviction is irrelevant to the question of whether defendants objectively possessed reasonable suspicion

---

[5] The Second Revised Joint Pre-Trial Order, which was submitted by the parties over eight months ago on January 31, 2011, includes the following stipulation of fact: "Plaintiff pled guilty to N.Y. Penal Law § 220.03: Criminal Possession of a Controlled Substance in the Seventh Degree on August 13, 2002, and was sentenced to one year imprisonment and six months suspended license." (Sec. Rev. JPTO at 5.) "Rule 16 of the Federal Rules of Civil Procedure provides that a pretrial order 'controls the course of the action,' and the 'court may modify the order . . . only to prevent manifest injustice.'" *Local 282, Int'l Bhd. Of Teamsters v. Pile Found. Constr. Co., Inc.*, No. 09-cv-4535, 2011 WL 3471403, at *2 (E.D.N.Y. Aug. 5, 2011) (Matsumoto, J.) (quoting Fed. R. Civ. P. 16(d), (e)). Because the purpose of a pre-trial order is "to insure the efficient resolution of cases and, most importantly, minimize prejudicial surprise," *Lamborn v. Dittmer*, 873 F.2d 522, 527 (2d Cir. 1989), "[m]odifications of the pretrial order should not be permitted where the amendment prejudices one of the parties." *Weg v. Macchiarola*, No. 84 Civ. 4430, 1992 WL 168322, at *14 (S.D.N.Y. July 1, 1992), *rev'd on other grounds*, 995 F.2d 15 (2d Cir. 1993). The decision to modify a pre-trial order is left to the discretion of the district court. *Bradford Trust Co. of Boston v. Merrill Lynch*, 805 F.2d 49, 52 (2d Cir. 1986). As discussed *infra*, the court in its discretion will revise the pre-trial order to omit the stipulated fact of plaintiff's misdemeanor possession conviction because it is irrelevant to the claims to be tried and is likely to cause prejudice to plaintiff and confuse the jury.

to conduct the alleged strip search.  As noted above, defendants argue that (1) plaintiff's actual possession of 26 bags of crack cocaine bear on the circumstances surrounding the alleged strip search and whether defendants were reasonable in suspecting that plaintiff was concealing contraband; and (2) defendants would be unfairly prejudiced if evidence of the misdemeanor possession conviction were excluded "because the jury may infer that the [underlying] stop and arrest were ultimately invalid." (Defs.' Mem. at 12-13; Defs.' Opp'n at 7, 13-15.)  These arguments essentially assert, however, that evidence of plaintiff's actual, uncontroverted *possession* of drugs on the day of the arrest is relevant to the unreasonable strip search claim.  The court agrees that evidence of plaintiff's *possession* of drugs is relevant to the "reasonable suspicion" inquiry,[6] but evidence of plaintiff's *conviction* for such possession is not.  Accordingly, plaintiff's motion to preclude evidence of his misdemeanor possession conviction is granted.

### 2. Other Prior Misdemeanor Convictions

Plaintiff also seeks to preclude defendants from introducing evidence of "any misdemeanor convictions not involving dishonesty or false statements." (Pl.'s Mem. at 2.) Because neither defendants nor plaintiff have specified the

---

[6] Notably, defendants will be permitted to admit evidence of plaintiff's actual possession of crack cocaine because the first stipulation of fact in the Second Joint Pre-Trial Order states:  "On June 11, 2002, plaintiff was in possession of 26 bags of crack cocaine." (Sec. Rev. JPTO at 5.)

nature, timing or circumstances of any such misdemeanor convictions, the court possesses insufficient information to rule on their admissibility. Consequently, the court reserves decision as to plaintiff's motion *in limine* with respect to other misdemeanor convictions.

### C. Admissibility of Plaintiff's "Rap Sheet"

Plaintiff seeks to preclude defendants from introducing a "New York State Division of Criminal Justice Services Rap Sheet" (the "Rap Sheet") that contains plaintiff's criminal record history, on grounds that the information contained therein is irrelevant and improper character evidence under Rule 404(b) insofar as defendants seek to introduce it to show that plaintiff has a propensity to commit crime. (Pl.'s Mem. at 2.) Plaintiff also contends that introduction of the Rap Sheet will prolong the trial unnecessarily "by requiring plaintiff to defend against the validity and constitutionality of any conviction(s) recorded." (*Id.* at 3.)

Defendants, on the other hand, seek to introduce unspecified "portions" of the Rap Sheet, "properly redacted, which reflect [plaintiff's] admissible felony and misdemeanor convictions" as a business record pursuant to Federal Rule of Evidence 902. (Defs.' Mem. at 17.) Defendants also argue that the Rap Sheet is admissible for purposes of assessing damages because they intend to show that plaintiff's emotional distress

13

from the incident at issue was diminished due to his multiple prior contacts with police, arrests, convictions and/or periods of incarceration. (Defs.' Opp'n at 9–11.)

As an initial matter, the Rap Sheet is not automatically admissible simply because it is a business record under Rule 902(11) because the relevance of the contents of the rap sheet has not been specified. Notwithstanding its status as a business record, the court may nevertheless exclude the Rap Sheet in whole or in part, or exclude questions regarding convictions in the Rap Sheet pursuant to Rules 402 and 403 if unfair prejudice to plaintiff outweighs the probative value of such evidence.

Because defendants did not attach a copy of the Rap Sheet, propose redactions or provide even a list of past felony and misdemeanor convictions on plaintiff's criminal record, the court is unable to conduct an informed and meaningful assessment of the probative value or prejudicial effect of introduction of the Rap Sheet. Therefore, the court reserves decision as to whether defendants may introduce the Rap Sheet as a document into evidence.

### D. Admissibility of Evidence of Plaintiff's Possession of Crack Cocaine on the Day of the Arrest

Plaintiff also seeks to preclude defendants' introduction of any evidence that he possessed crack cocaine on

the day of the arrest on grounds that such evidence is irrelevant and therefore inadmissible pursuant to Federal Rule of Evidence 402. (Pl.'s Mem. at 8.) Plaintiff argues that because defendants have "[t]hroughout the life of this litigation . . . repeatedly maintained" that they approached plaintiff's car when they observed him smoking marijuana--and not when they observed him with crack cocaine--evidence of his possession of other drugs is irrelevant to whether defendants possessed "reasonable suspicion" to strip search him. (*Id.*) In the alternative, plaintiff argues that the evidence is inadmissible under Rule 403 because its probative value is outweighed by the risk of prejudice to plaintiff. (*Id.*)

Defendants oppose plaintiff's motion, arguing that evidence of the 26 bags of crack cocaine recovered from plaintiff's person on the day of the arrest "strike[s] at the threshold of defendants' case, as any search of plaintiff is conditioned on the 26 bags of crack cocaine secreted in plaintiff's buttocks." (Defs.' Opp'n at 13.) In addition, defendants contend that evidence of plaintiff's possession of the crack cocaine must be admitted because plaintiff stipulated to the fact of such possession in the Second Revised Joint Pre-Trial Order. (*Id.*; *see also* Sec. Rev. JPTO at 5.)

As discussed *supra* in Section IV.B.1, the court finds that admission of evidence of plaintiff's possession of crack

15

cocaine is relevant and probative of whether defendants
possessed the reasonable suspicion necessary to lawfully conduct
the alleged strip search.  In *Hartline*, the Second Circuit
considered the following factors, *inter alia*, to determine
whether the circumstances of a plaintiff's arrest supported a
finding that the arresting officer possessed reasonable
suspicion that Hartline was "secreting contraband on her
person," thereby justifying a strip search:  whether the officer
saw Hartline take any suspicious actions "which might have
suggested she was hiding something as he approached her
vehicle"; whether the officer noticed anything about Hartline's
physical appearance that suggested she was concealing drugs on
her person; and whether he engaged in a less invasive pat-down
search that suggested the presence of contraband.  546 F.3d at
101.

Here, plaintiff's possession of 26 bags of crack
cocaine at the time of the arrest is relevant because it bears
on the likelihood, as he testified in his deposition, that he
attempted to conceal the bags upon defendants' approach and
whether defendants observed any suspicious actions suggesting
that plaintiff hid contraband on his person as they approached
his vehicle.  In addition, the court agrees with defendants that
"[t]he fact that plaintiff attempted to pack 26 bags of drugs
into his buttocks is directly relevant to defendants' argument

that the crack cocaine was sticking out of plaintiff's underwear at the time of his arrest." (*See* Defs. Mem. at 15.) In particular, the quantity of crack cocaine plaintiff possessed is relevant to the question of whether defendants noticed anything about plaintiff's physical appearance or actions that led the officers reasonably to suspect that he was concealing drugs on his person.

The court is also persuaded by defendants' assertion that admission of the *type* of drugs plaintiff possessed is relevant because crack cocaine comes in "lumpy, rocklike form," *DePierre v. United States*, 131 S. Ct. 2225, 2230 (2011), which is likely more difficult to secret in one's buttocks than drugs that take the form of powder, pill or leaf. Accordingly, the court denies plaintiff's motion to exclude evidence regarding his possession of crack cocaine on the day of his arrest and declines in its discretion to modify the joint stipulation that references such evidence in the Second Revised Joint Pre-Trial Order.[7] (*See* Sec. Rev. JPTO at 5.)

### E. Admissibility of Materials From Past Lawsuits to Which Plaintiff Was A Party

Plaintiff seeks to preclude defendants from introducing, other than for impeachment purposes, "any mention or reference to any other prior lawsuits which plaintiff has

---

[7] As discussed *supra* in footnote 4, the decision to modify a pre-trial order is left to the discretion of the district court. *Bradford Trust*, 805 F.2d at 52.

maintained or been involved [sic]," on grounds that such reference would cause unfair prejudice, distract the jury from relevant issues, and waste time. (Pl.'s Mem. at 3.) In particular, plaintiff seeks to preclude defendant from introducing "deposition testimony of plaintiff or the pleadings, motions, or summary judgment motion papers submitted by plaintiff in *Jean-Laurent v. Wilkinson, et al. . . .* " (the "*Wilkinson* Action"). (*Id.*)

In the *Wilkinson* Action,[8] plaintiff claimed that he was strip searched in full view of bystanders while in the custody of the New York City Department of Correction on June 16, 2004. (Defs.' Mem. at 22.) Although the *Wilkinson* Action was tried two years ago, the underlying incident in *Wilkinson* post-dated the June 11, 2002 alleged strip search at issue in the instant case. (Defs.' Opp'n at 11.) At a March 2006 deposition taken for purposes of the *Wilkinson* Action, plaintiff testified that as a result of the June 16, 2004 strip search, he felt "very upset," "disturbed" and "depressed." (Defs.' Mem. at 22.) Later in plaintiff's deposition, when asked whether he had experienced any emotional problems prior to the institution of the *Wilkinson* Action, plaintiff answered, "No." (Defs.' Mem. at

---

[8] Throughout their motion papers, defendants inaccurately refer to this action as the "Wilkerson" case. The docket numbers cited by both parties (05-cv-583) match, and the court has confirmed that the proper party name is "Wilkinson." *See Jean-Laurent v. Wilkinson*, No. 05 Civ 0583, 2009 WL 666832 (S.D.N.Y. Mar. 13, 2009).

22.)  Defendants seek to admit these portions of plaintiff's
prior *Wilkinson* deposition testimony to demonstrate that the
emotional injuries he now attributes to the June 11, 2002 strip
search in fact stem from the later strip search at issue in the
*Wilkinson* Action.  (Defs.' Mem. at 22-23.)

The court recognizes, and defendants concede, that it
is generally improper for a court to admit evidence of prior
lawsuits for the purpose of demonstrating that a plaintiff is a
"chronic litigant."  (Defs.' Mem. at 21 (citing *Outley v. City
of New York*, 837 F.2d 587, 591-93 (2d Cir. 1988).)  Pursuant to
Rule 404(b), however, such evidence may be admissible if offered
for a different purpose.  *See* Fed. R. Evid. 404(b) ("Evidence of
other . . . acts is not admissible to prove the character of a
person in order to show action in conformity therewith. It may,
however, be admissible for other purposes . . . .").

In *Brewer v. Jones*, a case cited by defendants, the
Second Circuit upheld a district court's admission of evidence
that *pro se* plaintiff filed a previous lawsuit, rejecting
plaintiff's argument on appeal that the "challenged evidence
improperly suggested that [plaintiff] had litigious tendencies."
222 F. App'x 69, 70 (2d Cir. 2007).  The Second Circuit noted
that, contrary to plaintiff's assertions, evidence of the prior
lawsuit was "relevant to show a possible cause of [plaintiff's]
injury unrelated to the acts of the defendant," and that the

19

district court had correctly determined that "the probative value of the evidence outweighed any possibility of prejudice." *Id*. at 70-71. Moreover, the Second Circuit found that any potential prejudice had been sufficiently curtailed by the defense's "scrupulous[] confine[ment of] its use of the challenged evidence to the purpose for which it was admitted." *Id*. at 71.

To the extent that plaintiff testifies at trial that he suffered emotional damages as a result of the June 11, 2002 strip search, defendants may introduce limited deposition testimony given by plaintiff in the *Wilkinson* Action as a prior inconsistent statement as to causation under Federal Rule of Evidence 801(d)(1)(A). In addition, the deposition testimony is admissible as a party admission under Federal Rule of Evidence 801(d)(2)(A). Moreover, the court finds that the probative value of evidence from the *Wilkinson* Action discussed *supra* sufficiently outweighs any unfair prejudice against plaintiff that may result, particularly because the court will allow only limited evidence regarding the prior lawsuit, to mitigate plaintiff's legitimate concerns of unfair prejudice, distraction and waste of time.

Accordingly, plaintiff's motion to preclude defendants from introducing, other than for impeachment purposes, "any mention or reference to any other prior lawsuits which plaintiff

has maintained or been involved [sic]," is granted in part and denied in part. Defendants' introduction of evidence regarding the *Wilkinson* Action is limited to the following: (1) the date of the *Wilkinson* Action; (2) plaintiff's allegation in the *Wilkinson* Action, that he was strip-searched in full view of bystanders and that it caused emotional injury; and (3) the following portions of plaintiff's *Wilkinson* Deposition: 51:18–19, 107:4–108:8, 108:20–109:1–4 (*see* ECF No. 153–4, Kunz Declaration, Exhibit 4). Apart from this limited scope of evidence, defendants are precluded from introducing, other than for impeachment purposes, any other reference to prior lawsuits initiated by plaintiff.

### F. Admissibility of Plaintiff's Prior Felony Assault Conviction

Plaintiff seeks to preclude defendants from introducing evidence that he was convicted of felonious assault in April 2005, on grounds of relevance and undue prejudice. (Pl.'s Mem. at 4–5.) Plaintiff argues that although defendants may introduce such evidence to impeach his credibility, the probative value is "substantially outweighed" by a risk of undue prejudice against defendant because the assault conviction involved violence rather than truthfulness. (Pl.'s Mem. at 4.)

Defendants counter that such evidence is relevant, not unduly prejudicial and "necessary to address plaintiff's

credibility," particularly because "apart from the contentions of plaintiff, there is no substantial evidence that would assist the jury in determining whether plaintiff's allegations are credible." (Defs.' Opp'n at 2-3.) Defendants therefore seek to introduce evidence regarding plaintiff's April 20, 2005 conviction for assault in the second degree (intent to cause physical injury with a weapon or instrument), for which he was sentenced to seven years imprisonment, under Federal Rule of Evidence 609(a)(1). (Defs.' Mem. at 8.)

Under Federal Rule of Evidence 609(a)(1), "[F]or the purpose of attacking the character for truthfulness of a witness, evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year . . . ." Fed. R. Ev. 609(a)(1). "In balancing probative value against prejudicial effect under this rule, courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977)).

The manner in which each factor affects the analysis is as follows.  First, significant impeachment value of a prior crime weighs in favor of admission of the prior crime. *Hernandez v. Kelly*, 09-CV-1576, 2011 WL 2117611, at *2 (E.D.N.Y. May 27, 2011).  The second factor, remoteness, is measured from the date of trial, and more recent convictions are deemed more probative than older convictions. *Hanley*, 2009 WL 1471180, at *4.  Third, "similarity of past and present offenses weighs heavily *against* the use of prior criminal convictions for impeachment purposes." *United States v. Brown*, 606 F. Supp. 2d 306, 314 (E.D.N.Y. 2009) (emphasis in original).  Accordingly, "[t]he less similar the pending case to the prior conviction, the less prejudicial its admission is." *Hanley*, 2009 WL 1471180, at *5.  Finally, where the credibility of a given witness is particularly important because there is little other documentary or supporting evidence and "success at trial probably hinges entirely on [the witness's] credibility with the jury," the fourth factor weighs in favor of admission of the prior conviction. *Jones v. City of New York*, No. 98 CIV 6493, 2002 WL 207008, at *3 (S.D.N.Y. Feb. 11, 2002).

Applying these principles to the instant case, the court finds that the first factor weighs against admission of the prior conviction.  "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's

propensity to testify truthfully." *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005). Nevertheless, the prior conviction defendants wish to admit--assault in the second degree--is a crime of violence, which ranks low on the scale of probative value on credibility, has "little or no direct bearing on honesty and veracity" and "may [have] result[ed] from a short temper, a combative nature, extreme provocation, or other causes." *Id*. at 617 (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)).

The second factor, remoteness, favors admission of the evidence because the assault conviction is six years old, and well within the ten-year limit imposed by Rule 609. The third factor, similarity of the crimes, favors exclusion of the evidence because assault is similar to the excessive force allegation at issue here. Introduction of the assault conviction may mislead or prejudice the jury to infer that plaintiff has a propensity for violence and to assume that the plaintiff engaged in assaultive behavior and that the degree of force used by defendants was reasonable. Therefore, this factor favors exclusion of the prior conviction. *See Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) (finding evidence of inmate plaintiff's prior felony assault conviction in excessive force action against correction officers would be "unacceptably prejudicial" because "assault convictions skirt too close to the

impermissible suggestion that the plaintiff had a propensity toward violence and acted in conformity with his aggressive predisposition"); *see also Daniels*, 986 F. Supp. at 251 (finding plaintiff's prior felony assault convictions inadmissible in excessive force action against police officers because "concerns of prejudice are implicated" as "the jury may improperly infer that, based on the prior conviction, the plaintiff instigated the incident"). Although defendants argue that the prior felony is not similar to the case at bar because plaintiff's assault conviction arose out of a domestic dispute rather than an assault on a police officer (*see* Defs.' Opp'n at 4), the court finds that the prior assault is sufficiently similar to weigh against admission of the evidence.

The fourth factor also weighs against admission of the evidence. Defendants argue that the importance of plaintiff's credibility is paramount in this case because "apart from the contentions of plaintiff, there is no other substantial evidence that would assist the jury in determining whether plaintiff's allegations are credible." (Defs.' Opp'n at 3.) Defendants rely on *Jones*, 2002 WL 207008, in support of their argument. In *Jones*, a plaintiff sued arresting officers for, *inter alia*, excessive force and intentional infliction of emotional distress. 2002 WL 207008, at *1. In determining whether to admit evidence of the plaintiff's prior felony convictions for

criminal mischief, burglary and possession of stolen property as
impeachment evidence under Rules 609(a)(1) and 403, the court
found that "[s]ince [plaintiff] is said to be the only witness
for the Plaintiff, there is no significant documentary evidence,
and Defendants deny the alleged incidents occurred, his success
at trial probably hinges entirely on his credibility with the
jury," a factor that weighed in favor of admitting the prior
convictions. *Id.* at *3.

Here, however, unlike *Jones* and contrary to
defendants' assertions, support for plaintiff's version of the
events exists apart from plaintiff's own testimony. According
to the Second Revised Joint Pre-Trial Order, plaintiff intends
to call his wife, Sandra Jean-Laurent, and James (Red) Minor as
additional witnesses to testify about the arrest incident on
behalf of plaintiff. (*See* Sec. Rev. JPTO at 5-6.) Therefore,
the need to admit otherwise disfavored evidence that does not
bear on plaintiff's credibility and is similar to the conduct at
issue is diminished significantly. Therefore, plaintiff's
motion to preclude evidence of his April 20, 2005 conviction for
felonious assault is granted.[9]

---

[9] Defendants point out that plaintiff himself included the certificate of
disposition--which contains a reference to the felony assault conviction--on
his own list of exhibits in the Second Revised Joint Pre-Trial Order.
(Defs.' Opp'n at 5; Sec. Rev. JPTO at 9.) Plaintiff is not obligated to
introduce all exhibits on his exhibit list and the court finds that grounds
exist to exclude this evidence.

## G. Admissibility of the Order of Protection Arising from Plaintiff's Felony Assault Conviction and Criminal Contempt Convictions Arising Therefrom

Plaintiff seeks to preclude defendants from introducing an order of protection issued in connection with plaintiff's felonious assault conviction (see ECF No. 157-3, Marutollo Declaration Exhibit G ("Order of Protection")). (Pls.' Mem. at 5.) According to the Order of Protection, on April 20, 2005, plaintiff was ordered to "stay away from" and "refrain from communication or any other contact" with Sandra Jean-Laurent and Amir Jean-Laurent until August 19, 2013. (Order of Protection.) Plaintiff argues against introduction of this evidence, claiming that it is irrelevant and inadmissible as a prior bad act under Rule 404(b). (Pl.'s Mem. at 5.) Furthermore, plaintiff argues that "as a matter of law," the Order of Protection expired on the date of plaintiff's release from prison on the assault conviction on May 30, 2010 (*id.*), although the court finds that plaintiff is in error in this respect.[10]

---

[10] In support, plaintiff cites section 2 of Chapter 384 of the Laws of New York of 2001, which provide, in relevant part:

> Upon sentencing on a conviction for any crime or violation between spouses, between a parent and child . . . the court may in addition to any other disposition, . . . enter an order of protection. . . . The duration of such an order shall be fixed by the court and, in the case of a felony conviction, shall not exceed the greater of: (i) five years from the date of such sentencing, or (ii) three years from the date of the expiration of the maximum term of an indeterminate sentence of imprisonment actually imposed . . . .

Defendants counter that the evidence is relevant for impeachment purposes as it relates to plaintiff's credibility, particularly because he was convicted of criminal contempt in the second degree under New York Penal Law Section 215.50(3) for "intentional disobedience or resistance to the lawful process or other mandate of the court" for violating the court Order of Protection by contacting Ms. Sandra Jean-Laurent. (Defs.' Opp'n at 6.) Moreover, defendants argue, plaintiff himself included on his own exhibit list the Certificate of Disposition associated with the felony assault conviction (*see* Sec. Rev. JPTO at 9), which bears a reference to the eight-year Order of Protection and the criminal contempt convictions. (Defs.' Opp'n at 5.)

The court finds that the probative value of the Order of Protection and plaintiff's subsequent misdemeanor convictions of criminal contempt for impeachment purposes is insufficient to outweigh the prejudicial effects of such evidence. In *Brown*, 606 F. Supp. 2d 306, this court evaluated the admissibility of evidence of a criminal contempt conviction based on violation of a court protective order. There, this court noted that the

---

As plaintiff's maximum seven-year sentence was "indeterminate" as defined by New York Penal Law Section 70, the maximum allowable duration of the protective order was ten years--three years from the date of expiration of the maximum term of seven years allowable as punishment for assault in the second degree, a class D felony. *See* N.Y. Pen. L. Section 70.00(2)(d). Therefore, plaintiff is in error and the Order of Protection remains in effect.

"conviction for criminal contempt is low on the impeachment
value scale as a crime not, 'by its nature, . . . probative . .
. of veracity,' or credibility." *Id*. at 315 (citing *United
States v. Ortiz*, 553 F.2d 782, 784 (2d. Cir. 1977)). At the
same time, such evidence is likely to prejudice the jury against
plaintiff, as the fact that plaintiff violated the Order of
Protection in procuring testimony from Ms. Jean-Laurent may
divert the jury's attention from the relevant issues.
Accordingly, the court grants plaintiff's motion *in limine* and
defendants are precluded from introducing evidence of the Order
of Protection and the resulting criminal contempt convictions.

**H. Admissibility of Corrections Department Records**

Plaintiff seeks to preclude the introduction of all
"[C]orrectional [D]epartment disciplinary and institutional
records of plaintiff" as irrelevant and overly prejudicial
(Federal Rules of Evidence 401, 402, and 403), improper "bad
acts" evidence (Rule 404(b)) and hearsay (Rule 801). (Pl.'s
Mem. at 5.) Defendants argue that insofar as the institutional
records relate to instances in which plaintiff was strip
searched while in the custody of the Department of Corrections,
the evidence therein is relevant to the question of damages.
(Defs.' Opp'n at 12-13.) Specifically, defendants seek to
question plaintiff about the numerous instances in which he was
strip searched prior to and after plaintiff's June 11, 2002

arrest, alleging that such evidence is "critical to undermining plaintiff's claimed damages." (Defs.' Mem. at 23.)

In support, defendants rely on *Banushi v. Palmer*, 08-CV-2937, 2011 WL 13894 (E.D.N.Y. Jan. 4, 2011), in which this court allowed defendants to inquire into a plaintiff's prior arrest history because it was relevant to the jury's determination of damages on plaintiff's false arrest claim. *Id.* at *3. Specifically, this court noted that such evidence was admissible under Federal Rule of Evidence 402 because a plaintiff "who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained." *Id.* (quoting *Wilson v. City of New York*, No. CV-06-229, 2006 U.S. Dist. LEXIS 90050, *1-2 (E.D.N.Y. Dec. 13, 2006)).

The Second Circuit has "upheld routine random strip searches, including body-cavity inspections, performed on prison inmates." *N.G. v. Connecticut*, 382 F.3d 225, 232 (2d Cir. 2004). The type of strip search at issue in the instant case is very different, however. Here, plaintiff contends that he was subjected to a "strip body-cavity search on the street before strangers" in which defendants allegedly caused plaintiff to "[stand] exposed to the public" as defendants allegedly conducted their strip search. (Am. Compl. ¶¶ 15-16.)

In view of these distinctions, while the court agrees that certain prior strip search incidents may be relevant to the question of damages, the court does not find the reasoning in *Banushi* directly applicable to the instant case because the psychological and emotional effects of strip searches may vary greatly depending on the attending circumstances, such as (1) whether the searches were conducted in public or in private, such as in a correctional facility, or (2) the number of bystanders present at the search, particularly if those bystanders were members of the general public. Consequently, the court grants in part and denies in part plaintiff's motion *in limine*. For purposes of addressing the issue of damages, defendants may use the records of the Department of Corrections to conduct a limited inquiry into any past strip searches to which plaintiff was subjected in public or in view of bystanders. Defendants may not otherwise introduce the plaintiff's disciplinary and institutional records into evidence because they are not relevant and because the risk of prejudice outweighs the probative value.

## I. Admissibility of Drug Expert Testimony

Plaintiff seeks to preclude defendants from introducing testimony from a chemist or drug expert on grounds that defendants have failed to comply with the witness-list disclosure requirements of Federal Rule of Civil Procedure

26(a)(2)(B).  (Pl.'s Mem. at 10.)  Because defendants advise

that they do not intend to introduce testimony from any such

witness (*see* Defs.' Opp'n at 16), this issue is moot.

### J. Admissibility of Testimony from Assistant District Attorney Barbara Wilkonowski

Plaintiff seeks to preclude trial testimony from

Queens County Assistant District Attorney ("ADA") Barbara

Wilkonowski regarding the criminal prosecution of plaintiff for

his unlawful possession of controlled substances on June 11,

2002.  (Pl.'s Mem. at 11.)  Specifically, plaintiff seeks to

preclude any testimony that is unrelated to his possession of

marijuana or the strip search of plaintiff during his arrest.

(*Id.*)  Defendants seek to preclude *all* testimony from ADA

Wilkonowski on grounds of lack of personal knowledge because she

was not present at the scene of plaintiff's arrest.  (Defs.'

Mem. at 24–25; Defs.' Opp'n 16–17.)  In addition, defendants

contend that any testimony regarding the subsequent criminal

prosecution of plaintiff is irrelevant.  (Defs.' Mem. at 25.)

Under Federal Rule of Evidence 602, "[a] witness may

not testify to a matter unless evidence is introduced sufficient

to support a finding that the witness has personal knowledge of

the matter."  Fed. R. Evid. 602.  All of plaintiff's claims

involve the circumstances surrounding the arrest, an event in

which ADA Wilkonowski had no involvement.  In view of her scope

of knowledge and the claims to be tried--excessive force, unreasonable strip search, conspiracy and conversion[11]--it is highly unlikely that any testimony from ADA Wilkonowski about the criminal prosecution would be relevant to these claims. Therefore, ADA Wilkonowski is precluded from testifying and plaintiff's and defendants' motion *in limine* regarding ADA Wilkonowski is granted.

## V.    Defendants' Motions *in Limine*[12]

As previously noted, plaintiff did not submit papers in opposition to defendants' motions *in limine*. Consequently, the court has decided defendants' unopposed motions with consideration to plaintiff's views to the extent reflected in his own motions *in limine*.

### A. Admissibility of Plaintiff's Reference to His Arrest or Prosecution as Unlawful

Because plaintiff refers to his arrest as unlawful in the Second Revised Joint Pre-Trial Order (*see* Sec. Rev. JPTO at 2), defendants posit upon information and belief that "plaintiff intends to argue at the trial that his arrest was unlawful." (Defs.' Mem. at 4.)  Consequently, defendants seek to preclude

---

[11] As discussed *infra* in section V.P.2., plaintiff's claim of intentional infliction of emotional distress is dismissed as time-barred.
[12] The undersigned's individual chamber practices establish a thirty-page limit for memoranda of law in support of motions on notice.  The court notes that defendants' memorandum in support of their motions *in limine* exceeded this page limit by thirteen pages and that defendants failed to move for leave to file excess pages.  Although the court reluctantly excuses defendants' failure to adhere to the page limit, in the future, defendants shall consult and comply with the chamber practices of the court.

plaintiff from referring to either the June 11, 2002 arrest or

the subsequent prosecution for criminal possession of a

controlled substance as "unlawful" at trial.  (*Id.*)

### 1. Admissibility of Reference to "Unlawful" Arrest

A false arrest claim brought under 42 U.S.C. § 1983

fails as a matter of law if the arrest was supported by probable

cause, and "a conviction of the plaintiff following [ ] arrest

is viewed as establishing the existence of probable cause."

*Green v. Gonzalez*, No. 09 Civ. 2636, 2010 WL 5094324, at *2

(S.D.N.Y. Nov. 22, 2010) (quoting *Cameron v. Fogarty*, 806 F.2d

380, 387 (2d Cir. 1986), *cert. denied,* 481 U.S. 1016 (1987)).

Accordingly, a guilty plea to the activity forming the basis of

the arrest bars a false arrest claim.  *Id.* at *3.

Applying the foregoing standards, plaintiff's false

arrest claim, predicated on his June 11, 2002 arrest, is barred

as a matter of law because plaintiff's subsequent guilty plea to

criminal possession establishes the existence of probable cause

to support the arrest and prosecution.  Consequently, reference

to the arrest during trial as "unlawful" would be improper and

would unfairly prejudice the defendants and confuse and mislead

the jury in contravention of Federal Rule of Evidence 403.

Accordingly, defendants' motion *in limine* to preclude

plaintiff's referral to his arrest and prosecution as "unlawful"

is granted.

## 2. Admissibility of Reference to "Unlawful" Prosecution

Defendants claim that reference to the prosecution as "unlawful" is improper because plaintiff's false arrest and malicious prosecution claims were previously dismissed by Judge Bianco in *Jean-Laurent*, 2008 WL 3049875, and "as such, the arrest and prosecution were lawful . . . ." (Defs.' Mem. at 4.) The court notes as an initial matter that Judge Bianco granted summary judgment and dismissed plaintiff's malicious prosecution claim because it was precluded by the *Heck* rule.[13] *Jean-Laurent*, 2008 WL 3049875, at *9. It does not follow that Judge Bianco found, based on the evidence before him, that the prosecution was in fact lawful, as defendants contend.

Nevertheless, the court grants defendants' motion *in limine* to preclude plaintiff from referring to his prosecution as "unlawful" during trial. The lawfulness of the prosecution lacks probative value with respect to any of the claims to be tried; therefore, any reference to an unlawful prosecution is improper under Federal Rules of Evidence 401 (relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action

---

[13] Under the *Heck* Rule, a prisoner seeking civil damages for allegedly unconstitutional (1) conviction, (2) imprisonment or (3) other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, may not proceed with a claim under 42 U.S.C. § 1983 without first proving that the conviction or sentence was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

more probable or less probable than it would be without the evidence") and 402 ("Evidence which is not relevant is not admissible.").

**B. Admissibility of the Issue of Municipal Liability at Trial**

Defendants seek to preclude plaintiff from raising the issue of, or introducing any evidence regarding, an "unconstitutional municipal policy or practice" because there is no municipal defendant in this action.  (Defs.' Mem. at 4-5.) Defendants argue that under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), and its progeny, "liability for an unconstitutional policy or practice must be asserted against a municipal defendant or an individual official with final policymaking authority in the particular area involved." (Defs.' Mem. at 4 (citing *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)).)  Defendants also argue that because defendants lack any policy-making authority, any attempt to impose liability on them for an unconstitutional municipal policy would fail as a matter of law.  (Defs.' Mem. at 5 (citing *Jeffes*, 208 F.3d at 57).)

As plaintiff did not bring this action against the City of New York, municipal officials or individuals with policy-making authority, the court agrees that defendants cannot be held liable for any unconstitutional municipal policy or

practice.  Consequently, any mention of an unconstitutional

municipal policy or practice would be improper under Federal

Rule of Evidence 402 because such reference is irrelevant and

under Rule 403 because it would likely result in unfair

prejudice against defendants or confusion of the issues, or

mislead the jury.  Accordingly, defendants' motion *in limine* to

preclude plaintiff's reference to municipal liability is

granted.[14]

### C. Admissibility of Evidence That Defense Counsel Are City Attorneys and that the City May Indemnify Defendants

#### 1. Admissibility of Reference to Counsel as City Attorneys

Defendants move to exclude evidence that defense

counsel are attorneys for the City of New York on grounds that

such reference would unfairly prejudice defendants because it

may lead the jury to believe that they may be indemnified by the

City of New York, "which is commonly viewed as a 'deep pocket'

for the purposes of any potential judgment."  (Defs.' Mem. at

5.)

Because the City of New York is not a defendant in

this action, the court agrees that any reference to defense

---

[14] The court denies defendants' request to preclude plaintiff "from
introducing any evidence or eliciting testimony that does not concern the
factual events of June 11, 2002" (*see* Defs.' Mem. at 5) because such request
is overbroad, as evidence not directly related to the events of June 11,
2002--such as evidence related to the credibility of a witness, for example--
may be relevant and admissible.

counsel as "City attorneys" may unfairly prejudice defendants

for the reasons cited.  The court finds appropriate the approach

taken by Judge Bloom in *Hernandez*.  *See* 2011 WL 2117611, at *6.

There, under similar circumstances, plaintiffs were precluded

from referring to the City of New York and defense counsel were

referred to as "attorneys from the Office of the Corporation

Counsel."  *Id*.  In addition, the court informed the jury that

the Corporation Counsel represents members of the New York City

Police Department, an agency of the City of New York.  *Id*.  The

court will apply the same procedures here.  Defendants' motion

*in limine* is granted as to this issue.

## 2. Admissibility of Indemnification

Defendants seek to preclude plaintiff from introducing

any evidence that the City may indemnify the defendants under

General Municipal Law.  (Defs.' Mem. at 6-8.)  Indemnification

is not relevant to any issue before the jury, and defendants'

motion is granted.  *See Hernandez*, 2011 WL 2117611, at *6

(barring introduction of evidence and argument regarding City's

potential indemnification of defendant police officers where

City was not a party to the action, finding such mention would

be prejudicial against defendants); *see also Williams v.*

*McCarthy,* No. 05 Civ. 10230, 2007 WL 3125314, at *7 (S.D.N.Y.

Oct. 25, 2007) (precluding indemnification from being presented

to the jury, explaining that "[a]lthough defendants do not cite

any Second Circuit law for this proposition, a number of courts have held that evidence of indemnification is inadmissible" and expressing agreement with those courts).

### D. Admissibility of Plaintiff's Prior Felony Convictions

Defendants seek to introduce evidence regarding plaintiff's April 20, 2005 conviction for felonious assault. (Defs.' Mem. at 8.)  For the reasons set forth *supra* in section IV.F., defendants' motion is denied.

### E. Admissibility of Evidence that Plaintiff was Convicted of Possession of a Controlled Substance in Regard to this Arrest

Defendants seek to introduce evidence of plaintiff's August 13, 2002 misdemeanor possession conviction.  (Defs.' Mem. at 11–14.)  For the reasons set forth *supra* in Section IV.B., defendants' motion *in limine* is denied.

### F. Admissibility of Evidence Regarding Plaintiff's Actions Prior to the Arrest

As set forth in the factual background summary in *Jean-Laurent*, 2008 WL 3049875, on the day of plaintiff's arrest--June 2, 2011--plaintiff and his wife were seated in their parked car when defendants approached them in a police car with their sirens on.  *Id*. at *1.  Defendants alleged that they approached plaintiff and his wife upon observing them smoking marijuana.  *Id*. at *2.  Plaintiff testified at his deposition that earlier in the day and prior to defendants' observation of

plaintiff, however, plaintiff had driven an unnamed individual to various locations in his wife's car, and "[plaintiff] assume[d] that the individual was going to these various locations for the purpose of selling drugs." *Id.* at *1 (internal quotation marks omitted). Plaintiff maintains that the 26 bags of crack cocaine later found on his person were "dropped" in his car by the unnamed individual. *Id.*

Defendants seek to elicit testimony from plaintiff regarding his actions prior to the arrest, including events that occurred before defendants saw him. Specifically, defendants seek to introduce plaintiff's testimony that he worked as an unlicensed taxi driver; picked up an unnamed individual whom he assumed to be a drug dealer "by coincidence"; drove the individual to multiple different locations; and came into possession of 26 bags of crack cocaine when the individual "dropped" the bags containing crack cocaine in his car. (Defs.' Mem. at 14–15.) Defendants argue that because plaintiff's story regarding the means by which he acquired the 26 bags of drugs is "less than credible," the court should allow inquiry into the story to enable the jury to assess plaintiff's credibility. Defendants further contend that such testimony would be relevant because "the drugs play such an important role in the alleged strip-search of plaintiff." (Defs.' Mem. at 15–16.)

The court respectfully disagrees with defendants'
contentions and finds that defendants' proposed evidence, as
described above, regarding plaintiff's activities on the day of
the arrest prior to defendants' observation of and encounter
with plaintiff is irrelevant to the claims to be tried.  Whether
and how plaintiff acquired the drugs found on his person during
the strip search will not assist the jury in assessing his
excessive force or unreasonable strip search claims because it
does not bear on "whether the officers' actions [were]
'objectively reasonable' in light of the facts and circumstances
confronting them," *Bryant*, 404 F.3d 128, 136 (2d Cir. 2005)
(internal citation omitted).  Because the events at issue
occurred *before* defendants saw plaintiff, they cannot be
considered as the "facts and circumstances confronting [the
searching officer] at the time" of the alleged strip search and
alleged use of excessive force.  *See Hartline*, 546 F.3d at 100
(quoting *Macon*, 472 U.S. at 470–71).  If defendants had
surveilled or witnessed plaintiff as he drove around with the
unnamed individual, or if they had seen the individual drop bags
of what appeared to be crack cocaine into plaintiff's car, then
testimony regarding such events would be relevant and probative
because they would assist the jury in determining whether the
defendants acted reasonably under the circumstances.  Such is
not the case here, however.

Notwithstanding defendants' further argument that such evidence should be admitted to aid the jury in assessing plaintiff's credibility because it "sets the stage for the incident" and "drugs play such a [sic] important role in the alleged strip-search of plaintiff" (*see* Defs.' Mem. at 16), the court doubts the probative value of the evidence and finds that introduction of such evidence will likely prejudice plaintiff and confuse and distract the jury, particularly because the evidence reflects events that *precede* defendants' encounter with plaintiff. Therefore, unless necessary to cross-examine plaintiff if he testifies to his actions prior to his encounter with the police on June 2, 2002, evidence of plaintiff's actions before the police observed plaintiff--including the means by which he came into possession of the 26 bags of crack cocaine-- are not admissible under Rule 403.

Defendants also seek admission of a portion of plaintiff's deposition testimony, in which plaintiff both denied and acknowledged that the 26 bags of crack cocaine were his, for purposes of attacking plaintiff's credibility. (Defs.' Mem. at 15-16; ECF 153-2, Kunz Declaration, Exhibit B ("Pl.'s Dep.") at 75:8-76:13.) The court notes that before plaintiff objected to defendants' questions regarding ownership of the drugs on relevance grounds (*see id.* at 75:22-76:3), he had already stated that the drugs were not his, but that he would take

responsibility for them (*see id.* at 75:10-20).  The court
sustains plaintiff's objection, but will permit defendants to
cross-examine plaintiff on the limited testimony given by
plaintiff preceding that objection (*see id.* at 75:5-20) as a
party admission under Federal Rule of Evidence 801(d)(2)(A).
Accordingly, defendants' motion is denied in part and granted in
part.

### G. Admissibility of Portions of Plaintiff's Criminal Record History

For the reasons discussed supra in Section IV.C., the
court reserves decision as to whether defendants may introduce
plaintiff's Rap Sheet, or portions thereof, as a document into
evidence.

### H. Admissibility of Plaintiff's Use of Aliases

Defendants seek to cross-examine plaintiff regarding
his use of various aliases for the purpose of attacking his
credibility under Federal Rule of Evidence 608(b).  (Defs.' Mem.
at 18-19.)  Rule 608(b) states that:

> Specific instances of the conduct of a
> witness, for the purpose of attacking or
> supporting the witness' character for
> truthfulness . . . may . . . in the
> discretion of the court, if probative of
> truthfulness or untruthfulness, be inquired
> into on cross-examination of the witness
> concerning the witness' character for
> truthfulness or untruthfulness . . . .

Evidence admitted under this Rule is subject to the probative-prejudice balancing test in Rule 403. *See United States v. Schwab*, 886 F.2d 509, 513 (2d Cir. 1989) (noting that courts must consider Rules 608(b) and 403 regarding admission of prior acts of misconduct).

Courts in the Second Circuit have consistently held that "a witness' use of false names or identities is the proper subject of cross-examination under Rule 608." *Williams*, 2007 WL 3125314, at *3; *see also Fletcher v. City of New York*, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999) (internal citation omitted) (allowing inquiry into plaintiff's use of eighteen different aliases pursuant to Rule 608(b), as long as questioning did not elicit "the fact that plaintiff was arrested and/or convicted for prior criminal conduct in connection with the use of these aliases"); *Brundidge v. City of Buffalo*, 79 F. Supp. 2d 219, 227 (W.D.N.Y. 1999) (allowing defendants to cross-examine plaintiff regarding her use of aliases and false Social Security numbers pursuant to Rule 608(b)).

Accordingly, defendants' motion *in limine* is granted. Defendants are permitted to cross-examine plaintiff regarding his use of aliases as long as defendants do not also "elicit[] the fact that plaintiff was arrested and/or convicted for prior criminal conduct in connection with the use of these aliases."

*Young v. Calhoun*, No. 85 CIV 7584, 1995 WL 169020, at *5
(S.D.N.Y. Apr. 10, 1995).

## I. Admissibility of Plaintiff's Employment History and Failure to Pay Income Taxes

Defendants seek to cross-examine plaintiff regarding his self-employment as an unregistered and unlicensed cab driver and his failure to pay income taxes at the time of the incident. (Defs.' Mem. at 19-21.) Defendants argue that such evidence is relevant to plaintiff's credibility and probative of his truthfulness, and therefore admissible pursuant to Rule 608(b). (*Id.*)

First, with respect to the inquiry into plaintiff's work as an "illegitimate cabdriver," the court takes guidance from *Edwards v. City of New York*, No. 08-2199, 2011 WL 2748665, at *4 (E.D.N.Y. July 13, 2011), in which another court in this district allowed a defendant to cross-examine the plaintiff regarding the fact that he operated his car sale and repair shop without the requisite permit or license because that fact "goes to the issue of his truthfulness" under Rule 608(b). The court also finds that the probative value of questions regarding the legality of plaintiff's cab-driving business is not outweighed by any potential prejudice that may arise as a result of such questioning.

Second, with regard to plaintiff's failure to pay income taxes, defendants point out that courts in this Circuit have consistently permitted cross-examination regarding a witness's failure to pay income taxes pursuant to Rule 608(b). In *United States v. Beridze*, the Second Circuit found no error in a prosecutor's cross-examination of a witness regarding his failure to pay taxes because such questions were "probative of his character for truthfulness" and permissible under Rule 608(b)). 415 F. App'x 320, 5 (2d Cir. 2011). *See also Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir. 1993) ("The total failure to file tax returns . . . should be similarly admissible on the issue of [defendant's] truthfulness."), *abrogated on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996); *Edwards*, 2011 WL 2748665, at *4 (allowing defense counsel to cross-examine plaintiff about his failure to file tax returns under Federal Rule of Evidence 608(b)). Moreover, the court does not find that undue prejudice will result from any such inquiry into plaintiff's past failure to pay income taxes.

Accordingly, the court grants defendants' motion *in limine* and will permit defendants to cross-examine plaintiff regarding his self-employment as an unregistered and unlicensed cab driver. In addition, if defendants first establish plaintiff's obligation to pay income taxes, they will be

permitted to cross-examine plaintiff regarding his failure to pay income taxes at the time of the incident.

### J. Admissibility of Past Strip Searches of Plaintiff

### 1. Evidence From Prior Strip Search Lawsuit

Defendants seek to introduce evidence to demonstrate that the emotional injuries plaintiff now attributes to the June 11, 2002 strip search are in fact attributable to the later strip search at issue in the *Wilkinson* Action, another lawsuit plaintiff filed. (Defs.' Mem. at 21–23.) For the reasons discussed *supra* in Section IV.E., defendants' motion is granted, although defendants' introduction of evidence regarding the *Wilkinson* Action is limited as specified in that section.

### 2. Evidence of Other Past Strip-Searches

Defendants seek to question plaintiff about the numerous instances in which he was strip searched prior to and after the June 11, 2002 arrest. (Defs.' Mem. at 23.) As discussed *supra* in Section IV.H., this motion is denied in part and granted in part. The court finds that inquiry into plaintiff's past strip searches is relevant to the jury's assessment of any damages insofar as the past strip searches bear a resemblance to the strip search alleged in the instant case--that is, one conducted in public or in view of bystanders unassociated with the search. The court finds that limited inquiry regarding such searches has probative value that

outweighs potential prejudice to the plaintiff.  Accordingly,
defendants will be permitted to inquire into any past strip
searches to which plaintiff has been subjected in public or in
view of bystanders.

### K. Admissibility of Witness Testimony from Anne Marie Jean-Laurent

Defendants seek to preclude plaintiff from calling his
mother, Anne Marie Jean-Laurent, as a witness on grounds of
relevance (Federal Rules 401, 402, and 403), hearsay (Rule 802),
and lack of personal knowledge (Rule 602).  (Defs.' Mem. at 24.)
Defendants claim that any testimony provided by Ms. Jean-Laurent
would be cumulative and likely to cause undue delay and
confusion to the jury.  (*Id.*)

"A federal district court has the power to exclude
evidence *in limine* only when evidence is clearly inadmissible on
all potential grounds" and "[u]nless evidence meets this high
standard, evidentiary rulings should be deferred until trial so
that questions of foundation, relevancy and potential prejudice
may be resolved in proper context." *Viada v. Osaka Health Spa,
Inc*., No. 04 Civ. 2744, 2005 WL 3435111, at *1 (S.D.N.Y.
Dec. 12, 2005).

In the Second Revised Joint Pre-Trial Order, plaintiff
states simply that Ms. Jean-Laurent will testify regarding "the
united state [sic] currency claim unaccounted for." (Sec. Rev.

JPTO at 6.)  Thus, Ms. Jean-Laurent's testimony potentially is relevant to plaintiff's conversion claim.  Moreover, plaintiff failed to submit papers in opposition to defendants' motion. Based on the foregoing, the court is unable to assess the basis, relevance or admissibility of potential testimony from Ms. Jean-Laurent.  Consequently, the court reserves decision as to this motion *in limine*.

### L. Admissibility of Witness Testimony from ADA Barbara Wilkonowski

For the reasons stated *supra* in section IV.J., defendants' motion to preclude testimony from ADA Wilkonowski is granted.

### M. Preclusion of Testimony from Witnesses Not Identified Pursuant to Fed. R. Civ. P. 26(A)

Defendants seek to preclude plaintiff from calling any witnesses whom he did not identify in the Second Revised Joint Pre-Trial Order.  (*See* Defs.' Mem. at 25; Sec. Rev. JPTO at 5–6.)  This issue was discussed at length during the court's September 16, 2011 telephone conference with both parties, during which the court determined that plaintiff may not call any witnesses apart from those listed in the Second Revised Joint Pre-Trial Order.  (*See* Minute Entry dated 9/16/2011.)

Plaintiff has repeatedly failed to comply with court orders to identify all witnesses (*see* ECF No. 51, Order dated 10/5/2006; ECF No. 127, Order dated 12/17/2009) and on one

occasion, the court even re-opened discovery--approximately three years after the close of discovery--to afford plaintiff another opportunity to properly identify all of his witnesses. (*See* Order dated 12/17/2009.)  In light of the these considerations, it is appropriate for the court to now preclude the addition of any more witnesses.  *See Gotlin v. Lederman*, 04 CV 3736, 2010 WL 1779984, at *6 (E.D.N.Y. May 3, 2010) (granting defendants' motion to preclude witnesses who were not identified until more than two years after discovery was closed and not identified by plaintiff as required by Federal Rule of Procedure 26).

Furthermore, the court agrees with defendants that allowing plaintiffs to add additional witnesses at this late date would significantly prejudice defendants because the addition of any yet-unidentified witnesses would delay the trial yet again.  Defendants, who have already endured a lengthy delay in this case, are entitled to test plaintiff's claims and present their defense at trial without any further adjournment. Moreover, given the extreme latitude and leniency that the court has already granted plaintiff, denial of the opportunity to present additional witnesses will not prejudice plaintiff. Accordingly, defendants' motion *in limine* is granted.

## N. Preclusion of Inquiry Into Defendants' Disciplinary Histories and Past Lawsuits

Defendants seek to preclude plaintiff from inquiring into defendants' disciplinary history on grounds that such evidence is inadmissible under Federal Rules of Evidence 401, 402, 403, 404(b) and 608(b).  (Defs.' Mem. at 28-32.) Defendants also move to preclude any inquiry regarding evidence of unrelated lawsuits against defendant, arguing that such inquiry is impermissible under Rules 403 and 404(b).  (Defs.' Mem. at 32-33.)

Under Rule 404(b), evidence of wrongful acts is inadmissible to show a defendant's propensity to commit the act at issue.  Nevertheless,

> Under the inclusionary approach followed in this circuit, evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity, as long as it is relevant to some disputed issue in the trial and satisfies the probative-prejudice balancing test of [Federal Rule of Evidence] 403.

*United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (internal quotation marks and citations omitted).  This court has "broad discretion" in deciding whether to admit evidence related to extrinsic acts.  *Ismail v. Cohen,* 899 F.2d 183, 188 (2d Cir. 1990).

As discussed *supra* in Section V.H., Rule 608(b) permits a witness to be cross-examined concerning "character for truthfulness or untruthfulness" with evidence of a witness's specific instances of conduct, if such evidence is probative of truthfulness or untruthfulness. This rule is applied in conjunction with the probative-prejudice balancing test in Rule 403. *Schwab*, 886 F.2d at 513.

### 1. Admissibility of Inquiry Into Defendants' Disciplinary Histories

Plaintiff previously conducted discovery into complaints made to the Civilian Complaint Review Board ("CCRB") regarding each defendant, and defendants indicate that all of the CCRB complaints were "unsubstantiated."[15] (Defs.' Mem. at 30.) Defendants assert that neither of them have any "prior substantiated allegations involving excessive force, unlawful strip search, or perjury and/or false statement within the past ten years," but they do not attach copies or indicate the nature of each CCRB complaint. (Defs.' Mem. at 29-30, 32.)

Under Federal Rule of Evidence 404(b), testimony concerning the CCRB complaints to prove either defendant's character and to show that on June 11, 2002, he acted in

---

[15] Another court in this district has noted that "the CCRB's determination that [an] excessive force claim was 'unsubstantiated' simply means that the allegations 'remain unresolved.'" *Vilkhu v. City of New York*, No. 06-CV-2095, 2009 WL 537495, at *3 n.5 (E.D.N.Y. Mar. 3, 2009); *see generally* http://www.nyc.gov/html/ccrb/html/how.html (explaining that a CCRB outcome of "unsubstantiated" indicates that the "allegations remain unresolved" and does not constitute a finding on the merits) (last visited Oct. 24, 2011)).

accordance with that character, is inadmissible.  Because the
parties have not provided the court with information about the
nature of past CCRB complaints brought against the defendants,
the court cannot determine whether such evidence may nonetheless
be relevant under the broad "inclusionary" rule of this circuit.
*Brennan*, 798 F.2d at 589 ("Under the inclusionary approach
followed in this circuit, evidence of prior crimes, wrongs, or
acts is admissible for any purpose other than to show a
defendant's criminal propensity, as long as it is relevant to
some disputed issue in the trial and satisfies the probative-
prejudice balancing test of [Federal Rule of Evidence] 403.")
(internal quotation marks and citations omitted).

 Nevertheless, because the CCRB complaints were not
substantiated, the court finds that under Rule 403, the
probative-prejudice balancing test weighs heavily in favor of
excluding the evidence.  In *Berkovich v. Hicks*, the Second
Circuit upheld the exclusion of all references at trial to a
police officer's history of private civilian complaints, finding
that despite the circuit's "inclusionary" approach, the
probative value of admitting CCRB complaints against the
defendant police officer was "substantially outweighed by its
potential for unfair prejudice."  922 F.2d 1018, 1022–23 (2d
Cir. 1991).  The Second Circuit specifically noted that the fact
of defendant's exoneration from six of the seven prior

complaints "tilt[ed] the scales further toward a finding of undue prejudice." *Id.* at 1023. *See also Wilkinson*, 2009 WL 666832, at *3 (allowing plaintiff to introduce "disciplinary histories [of defendant corrections officers] only as they relate to complaints that are less than ten years old that were found to be substantiated"). Accordingly, plaintiffs are precluded from presenting evidence of CCRB complaints against defendants that remain unsubstantiated, and defendants' motion *in limine* is granted.[16]

### 2. Admissibility of Inquiry Into Defendants' Prior Lawsuits

Defendants also seek to preclude plaintiff from introducing any evidence of prior lawsuits brought against defendants on grounds that such evidence is impermissible to show propensity, and more prejudicial than probative. (Defs.' Mem. at 32-33.) The probative value of evidence of prior lawsuits brought against either defendant depends on the nature and substance of such actions, but defendants have provided no information about the prior lawsuits upon which the court may base its judgment. Moreover, there is no indication that defendants were ever found liable. Accordingly, the court

---

[16] As defendants did not list the nature of the CCRB complaints, the court cannot assess whether the prior allegations would be probative for truthfulness or untruthfulness and therefore admissible under Rule 608(b). Nevertheless, even if the evidence were admissible under Rule 608(b), the court would deem the evidence inadmissible under Rule 403 because the prior allegations have not been substantiated.

reserves decision on this motion *in limine*. *Cf. Viada*, 2005 WL
3435111, at *1 (denying vague motions *in limine* because "the
Court is unable to determine, with any degree of certainty,
whether the [evidence] sought to be excluded from the trial
would be inadmissible under any of the provisions of the Federal
Rules of Evidence").

### M. Preclusion of Claims Against "P.O. John Doe" and Removal of "P.O. John Doe" As a Party to this Action

Based on portions of plaintiff's deposition testimony
outlined in *Jean-Laurent*, 2008 WL 3049875, plaintiff alleges
that "P.O. John Doe" pulled down plaintiff's pants and conducted
a strip search of plaintiff on the street while defendants
(Officer Hennessy and Sergeant O'Donnell) held onto plaintiff's
arms. *Id*. at *3. Defendants now move to remove "P.O. John Doe"
as a party to this action and to preclude plaintiff from raising
claims against "P.O. John Doe" during the trial. (Defs.' Mem.
at 33-34.) Defendants note that "P.O. John Doe" remains a
defendant in the caption of this case even though he has never
been served or even identified, despite significant efforts.
*See Jean-Laurent*, 2008 WL 3049875, at *5 (reviewing the court's
multiple--and ultimately fruitless--efforts to identify "P.O.
John Doe," including orders for production of sworn affidavits,
photo arrays, and the precinct roll call).

The court agrees that removal of "P.O. John Doe" from the caption of this case is warranted because plaintiff may not "maintain a suit against officers on a 'John Doe' basis, or even . . . sue some by name and then assert claims against unnamed defendants, and expect to receive a verdict and judgment against the named officers based on what John Doe allegedly did." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 412 (E.D.N.Y. 2011).

The court also finds that because "P.O. John Doe" will be removed from the caption of this case, plaintiff may not raise claims against "P.O. John Doe" during the trial. Notably, however, this decision does not affect plaintiff's ability to testify and introduce admissible evidence regarding the role of "P.O. John Doe" in the events surrounding plaintiff's June 11, 2002 arrest. Although such evidence arguably may be relevant to a claim for failure to intervene, plaintiff has not alleged nor included a claim for failure to intervene in his amended complaint or the Second Revised Joint Pre-Trial Order.[17]

Therefore, defendants' motion is granted and the court directs plaintiff to remove "P.O. John Doe" from the caption of

---

[17] As Judge Bianco observed, "even if defendants [Hennessy and O'Donnell] were not found to have actively participated in the strip search by restraining plaintiff as John Doe Officer conducted the search, defendants could also be found liable, depending on how the jury resolves the material issues of disputed fact, for failure to intervene in John Doe Officer's alleged unlawful search." *Jean-Laurent*, 2008 WL 3049875, at *14. Plaintiff, however, did not pursue this claim and thus may not advance this claim at trial.

this case and refrain from raising any claims against "P.O. John Doe" during the trial. *See Scadden v. Northwest Iowa Hosp. Corp.*, No. C06-4070-PAZ, 2010 WL 2619587, at *3 n.3 (N.D. Iowa June 25, 2010) ("Because Dr. John Doe 2 has not been identified, and the trial date is fast approaching, any reference to Dr. John Doe 2 should be removed from the Amended Complaint.")

### N. Plaintiff's Entitlement to Compensatory Damages for His Excessive Force Claim

Defendants seek a ruling from the court that plaintiff should be entitled to nothing more than nominal damages should the jury find that defendants used excessive force. (Defs.' Mem. at 34-36.) Defendants argue that this ruling is warranted because plaintiff's prior deposition testimony makes plain that he suffered no physical or emotional injury as a result of defendants' alleged use of excessive force during the June 11, 2002 arrest. (Defs.' Mem. at 35-36.)

Without reaching the merits of defendants' arguments, the court reminds defendants that "[t]he purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence." *Palmieri*, 88 F.3d at 141 (internal quotation marks and citation omitted). The substance of this motion does not relate to the admissibility of evidence and would be better

addressed through proposed jury instructions.  Accordingly, the
court denies defendants' motion *in limine*.

### O. Plaintiff's Submission to the Jury of a Specific Damages Amount

Defendants seek to preclude plaintiff from submitting
to the jury a specific dollar amount regarding compensatory
damages, arguing that the Second Circuit disfavors suggestion of
specific target amounts for the jury to award, because it may
"sway the jury unduly" by implying that the "particular number
is backed by some authority or legal precedent."  (Defs.' Mem.
at 36) (quoting *Consorti v. Armstrong World Indus.*, 72 F.3d
1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S.
1031 (1996)).

The court notes as an initial matter that the Second
Circuit "stated in the context of monetary awards *for pain and
suffering* that 'specifying target amounts for the jury to award
is disfavored.'"  *Edwards*, 2011 WL 2748665, at *2 (quoting
*Consorti*, 72 F.3d at 1016 (2d Cir. 1995)) (emphasis added).  In
other contexts, the Second Circuit has adopted a "flexible
approach" on this issue, holding that "[i]t is best left to the
discretion of the trial judge, who may either prohibit counsel
from mentioning specific figures or impose reasonable
limitations, including cautionary jury instructions."  *Lightfoot
v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997).

Consequently, the court will not permit plaintiff to submit to the jury a specific dollar amount regarding his damages for pain and suffering.  The court will, however, allow plaintiff to submit to the jury a specific dollar amount regarding other compensable damages he allegedly suffered as a result of defendants' alleged actions if he presents admissible evidence to support a finding of such damages during his case in chief.  Plaintiff may submit such an amount in his closing argument in accordance with the procedures in the *Edwards* case. The court elects in its discretion to adopt the approach used in *Edwards*, finding that the limitations imposed, together with the cautionary jury instruction, will be sufficient to prevent the jury from being unduly swayed.

Accordingly, the court grants in part and denies in part defendants' motion *in limine* to preclude plaintiff from suggesting a specific dollar amount for damages.  Plaintiff may not submit to the jury a specific dollar amount regarding his damages for pain and suffering.  If plaintiff introduces evidence to support a finding of other compensable damages, however, he may present to the jury a specific damages amount in the manner prescribed by *Edwards*.

## P. Dismissal of Plaintiff's State Law Claims As Untimely and Without Merit

Defendants claim that because plaintiff failed to assert his state-law tort claims within one year and ninety days pursuant to New York General Municipal Law § 50-k(6), those claims are barred by the statute of limitations.[18]  (Defs.' Mem. at 37.)  In addition, defendants contend that plaintiff's intentional infliction of emotional distress ("IIED") claim fails as a matter of law.  (*Id.*)  "While dismissing claims is not the prototypical purpose of a motion in limine, such motions have sometimes been addressed on the merits and have sometimes been construed as or converted into motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . ." *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 424 (S.D.N.Y. 2004) (internal citation and quotation marks omitted).

The incident giving rise to the instant action occurred on June 11, 2002, and plaintiff signed and filed his initial complaint in the Southern District of New York on February 2, 2005, asserting *inter alia*, claims of infliction of emotional distress against defendant Hennessy and two "John Doe"

---

[18] Defendants have not waived their statute-of-limitations defense because they raised it in their answer (*see* ECF No. 21, Answer to Amended Complaint ¶ 49) and the "affirmative defense . . . is preserved by assertion in a party's first responsive pleading." *Colon v. Goord*, 115 F. App'x 469, 470 (2d Cir. 2004); *see also Kulzer v. Pittsburg-Corning Corp.*, 942 F.2d 122, 125 (2d Cir. 1991) (finding "bare assertion" of statute-of-limitations defense in answer sufficiently preserved the defense to be raised mid-trial, despite failure to raise it in earlier dispositive motions).

police officers.[19]  (Init. Compl. at 2.[20])  Plaintiff did not

assert claims of conspiracy to violate civil rights, intentional

infliction of emotional distress or conversion[21] in his Initial

Complaint.  (*See generally id.*)  Plaintiff asserted the state

law claims at issue here--intentional infliction of emotional

distress, conspiracy and conversion--in his Amended Complaint,

filed on November 23, 2005.  (Am. Compl. ¶¶ 27, 32, 34, 37.)

    Because the facts as set forth in the Initial

Complaint provide sufficient notice of the transactions and

occurrences to be proven pursuant to the newly pled claims in

the Amended Complaint, the state law claims "relate back" to the

Initial Complaint and are deemed to have been interposed on

February 2, 2005, the date of the Initial Complaint.  N.Y.

C.P.L.R. § 203(f) (McKinney's 2011) ("A claim asserted in an

amended pleading is deemed to have been interposed at the time

the claims in the original pleading were interposed, unless the

original pleading does not give notice of the transactions,

occurrences, or series of transactions or occurrences, to be

proved pursuant to the amended pleading.").

---

[19] The case was transferred to this district on February 24, 2005.  (Transfer Order.)
[20] As this document was not paginated, the page number indicated here corresponds to the page number assigned by the Electronic Case Filing system.
[21] Plaintiff did assert facts to support a conversion claim in the Initial Complaint, but he did not add "conversion" or loss of money in the "injuries" section of the Initial Complaint. (Init. Compl. at 2.)

Defendants claim that the limitations period of "one year and ninety days" set forth in New York General Municipal Law Section 50-k(6) ("Section 50-k(6)") applies to plaintiff's claims. (Defs.' Mem. at 37.) Section 50-k(6) requires a party asserting a claim against employees of the City of New York acting in the scope of their employment to (1) file a notice of claim within ninety days of the incident underlying the claim and (2) commence the action within one year and ninety days from the date on which the cause of action accrued. In *Jean-Laurent*, 2008 WL 3049875, however, Judge Bianco found that plaintiff was not required to comply with the notice requirement set forth in New York General Municipal Law Sections 50-e, 50-i and 50-k because the notice requirement "does not apply to claims asserted against municipal employees in their individual capacities that allege injuries resulting from intentional wrongdoing . . . for which the City has no obligation to indemnify," *id*. at *19 (quoting *Brenner v. Heavener*, 492 F. Supp. 2d 399, 404-05 (S.D.N.Y. 2007)), and "if defendants were found liable for conspiracy, intentional infliction of emotional distress, or conversion, defendants would be in violation of their department's rules and regulations and . . . would have engaged in intentional wrongdoing." *Id.*

For the same reasons, the limitation period of "one year and ninety days" set forth in New York General Municipal

Law section 50-k(6) does not apply to the state law claims brought against these defendants.  Rather, as individually discussed below, the general statutes of limitations for each alleged state law claim govern.

### 1. Timeliness of Conversion Claim

The statute of limitations for a conversion claim is three years.  N.Y. C.P.L.R. § 214[3] (McKinney's 2011); *Beesmer v. Besicorp Dev., Inc.*, 900 N.Y.S.2d 472, 476 (3d Dep't 2010).  Plaintiff is deemed to have asserted his conversion claim on February 2, 2005, less than three years after the June 11, 2002 incident.  Therefore, plaintiff's conversion claim is timely and defendants' motion *in limine* to dismiss this claim as untimely is denied.

### 2. Timeliness of Intentional Infliction of Emotional Distress Claim

The statute of limitations for a claim of intentional infliction of emotional distress is one year.  N.Y. C.P.L.R. 215[3] (McKinney's 2011); *Bridgers v. Wagner*, 915 N.Y.S.2d 265, 266 (1st Dep't 2011).  Therefore, this state law claim is barred as untimely, as plaintiff failed to assert his IIED claim by June 11, 2003, one year after the underlying incident.  Accordingly, defendants' motion *in limine* to dismiss this claim as untimely is granted.

### 3. Timeliness of "Conspiracy to Violate Civil Rights" Claim

Because "New York does not recognize an independent tort of civil conspiracy, such a cause of action is available only if there is evidence of an underlying actionable tort." *Baker v. R.T. Vanderbilt Co.*, 688 N.Y.S.2d 726, 729 (3d Dep't 1999) (internal citations omitted). Therefore, "[t]he statute of limitations for civil conspiracy is the same as that for the underlying tort." *Brady v. Lynes*, No. 05 Civ. 6540, 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008) (citing *Schlotthauer v. Sanders*, 545 N.Y.S.2d 197, 199 (2d Dep't 1999)).

The underlying torts at issue are excessive force and unreasonable strip search, both of which plaintiff assert under 42 U.S.C. § 1983. A three-year statute of limitations applies to section 1983 actions filed in federal courts in New York. *Cuevas v. City of New York*, No. 07 Civ. 4169, 2009 WL 4773033, at *2 (S.D.N.Y. Dec. 7, 2009). Moreover, "[t]he claim accrues when a plaintiff 'knew or had reason to know of the injury that is the basis of the action.'" *Id.* (quoting *Sterngrass v. Palisades Interstate Park Comm'n*, 260 F. App'x 395 (2d Cir.), *cert denied*, 554 U.S. 919 (2008)). Because plaintiff is deemed to have asserted his civil conspiracy claim on February 2, 2005, within three years of June 11, 2002, plaintiff's civil conspiracy claim is timely. Accordingly, defendants' motion *in*

*limine* to dismiss the civil conspiracy claim as untimely is denied.

### Q. Admissibility of Certain Exhibits Listed in the Second Revised Joint Pre-Trial Order

Defendants object to the admission of various items that appear on plaintiff's list of exhibits on the Second Revised Pre-Trial Order. (Defs.' Mem. at 38–42; Sec. Rev. JPTO at 8–10.) The court will address each objection in turn.

### 1. Admissibility of Items 6 and 12 on Plaintiff's Exhibit List

Defendants object to the "wholesale admission" of Items 6 (New York City Criminal Court documents regarding prosecution of plaintiff following the June 11, 2002 incident) and 12 (Queens County Supreme Court documents regarding prosecution of plaintiff in a prior felony matter), although they note that they "may not object to the use of specific documents from these larger files." (Defs.' Mem. at 39.) Given defendants' description of Item 12, and the fact that the Bates Number range for Item 12 spans 79 pages, it is unlikely that Item 12 should be admitted in its entirety. In any event, defendants' failure to specify and append copies of the records to which they object inhibits the court's ability to assess the admissibility of each item, and the court is unwilling to rule on this motion *in limine* only based on assumptions regarding the content and nature of the documents. Therefore, the court

denies without prejudice this motion *in limine* with respect to
Items 6 and 12.

### 2. Admissibility of Police Roll Call

Defendants seek to preclude the admission of a list of
all officers assigned to the 102d Precinct on June 11, 2002, on
grounds of relevance, because nothing in the roll call relates
to the events underlying plaintiff's claims. (Defs.' Mem. at
39-40.) The court agrees that a mere list of names of
defendants' fellow officers who were on duty on the date in
question would have no probative value. Therefore, defendants'
motion *in limine* to preclude admission of the police roll call
referenced in plaintiff's exhibit list is granted.

### 3. Admissibility of Court Documents, Attorney Correspondence and Materials Submitted During Discovery

Defendants object to admission of Items 14 (defendants'
answers to the Initial and Amended Complaints), 15 (defendants'
responses to plaintiff's discovery requests), 16
("correspondences from defendants to plaintiff") and 18
(pleadings, motions and summary judgment papers submitted by
both parties in this case) on plaintiff's exhibit list,
contending that these documents are irrelevant to the claims.
(Defs.' Mem. at 40-41.) Defendants argue in particular that any
probative value of defendants' discovery responses would be
outweighed by prejudice to defendants because the responses

"reference prior allegations of misconduct made against
defendants." (*Id.* at 41.)  Moreover, defendants contend that
plaintiff has not specified which correspondence documents he
seeks to admit, and in any case, that the correspondence would
be irrelevant to the claims to be tried.  (*Id.*)

Although the court finds that certain portions of the
aforementioned documents are irrelevant to the instant claims,
defendants overlook the fact that such documents--or portions
therein--may be admissible for other purposes, such as
impeachment.  Therefore, the court reserves decision on this
motion *in limine* so that objections may be placed in their
appropriate factual context.  *See Nat'l. Union Fire Ins. Co.*,
937 F. Supp. at 287 (reserving decision on a motion *in limine*
because "the current motion is too sweeping in scope to be
decided *in limine*").

**4. Admissibility of Defendants' Affidavits**

Defendants seek to preclude the admission of
affidavits given by each defendant regarding their efforts to
identify the "John Doe" police officer defendant on grounds that
the affidavits are irrelevant and because both defendants will
testify at trial, and their live testimony is preferable to a
prior affidavit.  (Defs.' Mem. at 41.)  As discussed *supra*, the
court-ordered efforts to identify Officer "John Doe" were
extensive yet fruitless, and the court has directed plaintiff to

remove "John Doe" from the caption of this case.  As such, the
affidavits have no bearing on the issues to be tried.
Accordingly, insofar as the affidavits in question solely
discuss efforts by defendants to identify "John Doe,"
defendants' motion to preclude the affidavits is granted.

### 5. Admissibility of Plaintiff's Deposition Transcript

Defendants object to any attempt by plaintiff to admit
plaintiff's own deposition transcript as hearsay and as
cumulative and confusing evidence.  (Defs.' Mem. at 42.)  The
court grants defendants' motion *in limine*.

The Federal Rules of Evidence define hearsay as "a
statement, other than one made by the declarant while testifying
at the trial or hearing, offered in evidence to prove the truth
of the matter asserted."  Fed. R. Evid. 801(c).  The only
conceivable purpose plaintiff may have for introducing his
deposition transcript into evidence is to offer the statements
therein for the truth of the matters asserted; therefore, the
transcript qualifies as hearsay evidence.

"Hearsay is not admissible except as provided by these
rules or by other rules prescribed by the Supreme Court pursuant
to statutory authority or by Act of Congress."  Fed. R. Evid.
802.  To be admissible, then, the deposition transcript must
fall within an exception to the hearsay rule.  The court finds
that the deposition transcript does not meet the definition of

"statements which are not hearsay" in Federal Rule of Evidence 801(d).  Moreover, the transcript does not fit within any of the hearsay exceptions listed in Federal Rule of Evidence 803, and plaintiff--the declarant--is not "unavailable" for purposes of the hearsay exception in Federal Rule of Evidence 804. Accordingly, as the deposition transcript would constitute inadmissible hearsay, defendants' motion *in limine* is granted.

## CONCLUSION

For the reasons set forth above, (1) Plaintiff's motion to preclude the introduction of evidence of plaintiff's prior felony convictions that are more than ten years old is granted.  (2) Plaintiff's motion to preclude the introduction of evidence of his August 13, 2002 guilty plea and misdemeanor possession conviction is granted.  The court reserves decision as to plaintiff's motion to preclude the introduction of evidence of any other misdemeanor convictions.  (3) The court reserves decision as to plaintiff's motion to preclude the introduction of his "Rap Sheet."  (4) The court denies plaintiff's motion to exclude evidence regarding his possession of crack cocaine on the day of his arrest.  (5) Plaintiff's motion to preclude, other than for impeachment purposes, the introduction of materials from past lawsuits to which plaintiff was a party is granted in part and denied in part. (6) Plaintiff's motion to preclude the introduction of evidence of

his April 20, 2005 conviction for felonious assault is granted.
(7) Plaintiff's motion to preclude defendants from introducing
the Order of Protection issued in connection with plaintiff's
felonious assault conviction is granted.  Defendants are also
precluded from introducing evidence of the related criminal
contempt convictions.  (8) Plaintiff's motion to preclude the
introduction of all of his Department of Correction records is
granted in part and denied in part.  (9) Plaintiff's motion to
preclude the introduction of drug expert testimony is moot
because defendants do not intend to call any such expert as a
witness.  (10) Plaintiff's motion to preclude the introduction
of testimony of ADA Wilkonowski is granted.

      In addition, (1) Defendants' motion to preclude
plaintiff from referring to either the June 11, 2002 arrest or
the subsequent prosecution for criminal possession of a
controlled substance as "unlawful" at trial is granted.
(2) Defendants' motion to preclude plaintiff from raising the
issue of, or introducing any evidence regarding, an
"unconstitutional municipal policy or practice" is granted.
(3) Defendants' motion to preclude the introduction of evidence
that (a) defense counsel are attorneys for the City of New York
and (b) the City may indemnify the defendants, is granted.
(4) Defendants' motion to introduce evidence regarding
plaintiff's April 20, 2005 conviction for assault in the second

degree is denied.  (5) Defendants' motion to introduce evidence

of plaintiff's August 13, 2002 misdemeanor possession conviction

is denied.  (6) Defendants' motion to introduce evidence

regarding plaintiff's actions prior to the arrest as described

in defendants' papers is granted in part and denied in part.

(7) The court reserves decision as to defendants' motion

regarding the admissibility of portions of plaintiff's "Rap

Sheet."  (8) Defendants' motion to cross-examine plaintiff

regarding his use of aliases is granted. (9) Defendants' motion

to introduce evidence of plaintiff's self-employment as an

unregistered and unlicensed cab driver and his failure to pay

income taxes is granted.  (10) Defendants' motion to introduce

evidence to demonstrate that the emotional injuries plaintiff

attributes to the June 11, 2002 strip search are in fact

attributable to the later strip search at issue in the *Wilkinson*

Action is granted, although defendants' introduction of evidence

regarding the Wilkinson Action is limited as summarized *supra* in

Section IV.E.  In addition, defendants' motion to permit inquiry

into any past strip searches to which plaintiff has been

subjected is granted insofar as questioning is limited to strip

searches conducted in public or in view of bystanders.  (11) The

court reserves decision as to defendants' motion to preclude

plaintiff from calling his mother, Anne Marie Jean-Laurent, as a

witness.  (12) Defendants' motion to preclude testimony from ADA

Wilkonowski is granted. (13) Defendants' motion to preclude plaintiff from calling any witnesses not identified in the Second Revised Joint Pre-Trial Order is granted. (14) Defendants' motion to preclude plaintiff from inquiring into defendants' disciplinary history is granted as to CCRB complaints brought against defendants, but the court reserves decision as to the admissibility of evidence of prior lawsuits brought against defendants in which defendants were found liable. (15) Defendants' motion to remove "P.O. John Doe" as a party to this action and to preclude plaintiff from raising claims against "P.O. John Doe" during the trial is granted. (16) Defendants' motion to preclude plaintiff from seeking compensatory damages for his excessive force claim is denied. (17) Defendants' motion to preclude plaintiff from submitting to the jury a specific dollar amount regarding compensatory damages is granted in part and denied in part. (18)(a) Defendants' motion to dismiss plaintiff's conversion claim as untimely is denied; (b) Defendants' motion to dismiss plaintiff's intentional infliction of emotional distress claim as untimely is granted; and (c) Defendants' motion to dismiss plaintiff's conspiracy claim as untimely is denied. (19) The court (a) denies without prejudice defendants' motion to preclude the admission of items 6 and 12 on plaintiff's list of exhibits; (b) grants defendants' motion to preclude the

admission of the police roll call; (c) reserves decision as to the admissibility of items 14, 15, 16, and 18 on plaintiff's list of exhibits; (d) grants defendants' motion to preclude defendants' affidavits as discussed *supra*; and (e) grants defendants' motion to preclude plaintiff's deposition transcript.

**SO ORDERED.**

Dated: October 24, 2011
Brooklyn, New York

```
_____/s/_____
```
Kiyo A. Matsumoto
United States District Judge